[Civ. No. 15180.   First Dist., Div. One.   Oct. 21, 1952.]

NICOL SMITH, Appellant, v. SIMEON E. SHEFFEY et al., Respondents.

Robert Hayes Smith for Appellant.

Simeon E. Sheffey, in pro. per., and Alden Ames for Respondents.

WOOD (Fred B.), J.—Plaintiff appeals from a judgment that he take nothing, in an action brought by him to declare void the trustee's sale of certain land under a deed of trust, to reinstate the deed of trust and the indebtedness secured by it, and for an accounting.

The deed of trust was executed August 22, 1938, by H. J. Grenville and Kathleen Moore to secure their promissory note (hereinafter called the Grenville note) in the principal sum of $5,785.90. June 27, 1940, Monterey Bay Properties Corporation (hereinafter called the Monterey company) became the owner of the Grenville note. By a writing dated June 27, 1940, acknowledged October 18, 1940, and recorded July 16, 1941, the Monterey company designated California Pacific Title and Trust Company as trustee in lieu of the trustees originally appointed. October 18, 1940, the Monterey company assigned to defendant Simeon E. Sheffey its interest in the Grenville note and deed of trust as collateral security for its note in the sum of $1,100 to Sheffey as payee. It was agreed that if Sheffey collected the money due on the Grenville note, the surplus over the amount due on the $1,100 note would be paid by him to the Monterey company or its assigns.

March 27, 1941, Monterey company executed an agreement with the plaintiff to assign to him its rights in the Grenville note and deed of trust subject to the prior assignment thereof to defendant Sheffey. By an instrument dated March 27, 1944, acknowledged November 14, 1947, and recorded November 19, 1948, the Monterey company assigned to plaintiff all its right, title and interest in the Grenville note and deed of trust subject to the prior assignment to defendant Sheffey.

In March, 1941, Sheffey filed notice of default in payment of the Grenville note. By an instrument dated October 30, 1941, and recorded November 27, 1941, defendant Sheffey designated Eric Falconer as trustee under the Grenville deed of trust. December 30, 1941, Falconer, as trustee, sold the property to Sheffey for $1,075, the balance due Sheffey on the Monterey company note. The trustee's deed dated December 30, 1941, was recorded February 2, 1942. November 19, 1948, plaintiff filed the present action predicated principally upon the claim that the deed to Sheffey as purchaser at the trustee's sale was void because assertedly Falconer had not been legally appointed trustee under the deed of trust.[*]

The court found against the plaintiff upon all the issues and concluded that the rights of plaintiff were foreclosed by the foreclosure sale held by Falconer, as trustee; that plaintiff's cause of action was barred by section 338(4) of the Code of Civil Procedure; that his cause of action was barred by the laches of plaintiff in the prosecution of his action; and that defendant Sheffey is owner in fee of the lands involved except those portions which he deeded to defendant Cevasco who is the owner in fee of those portions, and that the defendants have acquired title to the lands by adverse possession and paying all taxes and assessments levied against the lands for the period required by law to gain title by adverse possession.

Plaintiff's main attack upon the validity of Sheffey's appointment of Falconer as trustee is based upon the theory that Sheffey was a mere pledgee of the beneficiary's rights under the deed of trust, hence could not exercise the power given the "beneficiary" by section 2934a of the Civil Code to appoint a new trustee. This point is not well taken, particu-

---

[*]During the trial plaintiff also contended that defendant Sheffey acquired title at the trustee's sale but acquired it subject to a trust in favor of plaintiff, predicated upon an asserted attorney-client relationship. The trial court found there was no such relationship and plaintiff does not challenge that finding upon this appeal.

larly in view of the fact that the instrument of pledge expressly declared that Sheffey, the pledgee, "shall have the right at any time said note assigned as collateral security hereby is in default to give notice of default in the manner prescribed by law in the name of and on behalf of the parties hereto and shall have the right to pursue all of the rights and remedies for the collection of said assigned note that the undersigned assignor herein has."

The finding that plaintiff's action is barred by his laches is amply supported by the evidence of the acts of dominion which defendant exercised over the land, commencing with his initial occupancy (January 1 or 2, 1942) and continuing to and after the filing of this action (November 19, 1948), interrupted only by the period of plaintiff's military service (August 19, 1942, to November 24, 1945). This period somewhat in excess of three and one half years (exclusive of the period of military service) fell short of the four-year period prescribed by section 343 of the Code of Civil Procedure. (See *Moss* v. *Moss,* 20 Cal.2d 640, 644-645 [128 P.2d 526, 141 A.L.R. 1422], concerning the applicable statute of limitations.) However, the statute of limitations does not control equity in applying the principle of laches (*Livermore* v. *Beal,* 18 Cal.App.2d 535, 548 [64 P.2d 987]). "Laches does not rest entirely upon lapse of time. Unlike the statute of limitations it does not require any specified period of delay. [Citation.] Courts of equity will refuse relief even where the statutory time of limitation has not run, if in addition to mere passive neglect there is a showing of facts amounting to acquiescence in the acts complained of, or other circumstances which, coupled with the delay, render the granting of relief inequitable." (*Neet* v. *Holmes,* 25 Cal.2d 447, 460 [154 P.2d 854].) Laches is a question of fact and as such is a question "to be determined primarily and very largely by the trial court, and an appellate court will not interfere with its discretion in this respect unless manifest injustice has been done, or unless its conclusion cannot reasonably be held to find support in the evidence." (*Wolpert* v. *Gripton,* 213 Cal. 474, 483 [2 P.2d 767]; and see *Gutknecht* v. *Paul,* 83 Cal.App.2d 356 [188 P.2d 764].)

A brief summary of Sheffey's dealings with the land and plaintiff's knowledge thereof and acquiescence therein will demonstrate the sufficiency of the evidence to support the finding of laches. Sheffey went on the land and took possession January 1 or 2, 1942. He rented it to one Mc-

Kernan for the year 1942 for $15 which McKernan paid for the privilege of running his horses on the land and making sure that the gates would be kept closed. In 1943 Sheffey let one Cordy run cattle on the property for $25, an arrangement which was repeated in subsequent years until the fall of 1947, Cordy ditching the roads on the property during each rainy season in lieu of paying a cash rental. In 1943 Sheffey cleared the roads on the property and cleaned out two springs, constructing dams to hold some of the spring water. Sheffey's son also worked on clearing the roads and on the springs. In 1945 or 1946, Sheffey and his son commenced the building of a cabin on the property which was finished in 1947. From 1942 to the time of the trial Sheffey spent week-ends on the property camping out there until the cabin was completed.

In July, 1941, Sheffey told R. H. Smith, the father of the plaintiff,* that he was susbtituting one Eric Falconer as trustee under the Grenville deed of trust. He also informed R. H. Smith that there was nothing to do but foreclose as Grenville had said he would make no further payments. R. H. Smith said he would pay the balance due Sheffey and take an assignment of Sheffey's claim but he never paid Sheffey anything. In November, 1941, Sheffey told R. H. Smith he had waited as long as he was going to wait and was going to foreclose. Again, Smith said he would get the money to Sheffey but he paid nothing, and made no offer or tender of payment. A few days after the sale, Sheffey told R. H. Smith that the trustee sale had been held, that it wiped out all liens including Smith's and that Smith no longer had any interest in the property. In May, 1942, R. H. Smith as attorney in fact for plaintiff and knowing that Sheffey claimed to be the owner, entered into a written agreement with Sheffey whereby Sheffey agreed to sell and plaintiff to buy this property for $3,000 with a right in the buyer to remove timber and cordwood, paying certain rates therefor, such payments to be credited on the purchase price. In 1942, a Mr. Brooks was on the property, improving it under a contract with Smith. In January, 1943, Sheffey terminated his agreement with Smith for failure of Smith to make any payments.

---

*Sheffey never met the plaintiff, Nicol Smith. All of his dealings in relation to plaintiff were with the latter's father, R. H. Smith, who acted as plaintiff's attorney in fact. R. H. Smith is an attorney at law and in that capacity represents the plaintiff upon this appeal.

·Sheffey paid all taxes levied on the property from 1941, including delinquent taxes from 1938, claiming the property as his own. In 1944 and 1945, Sheffey conveyed three 40-acre parcels of this property to defendant Cevasco in consideration of her paying delinquent taxes on the land.

In view of our conclusion that plaintiff's action is barred by his laches, it is unnecessary to consider other reasons advanced by the defendants in support of the judgment.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

·Appellant's petition for a hearing by the Supreme Court was denied December 18, 1952.