Lucille MEYST, Earl Meyst, Sheryl Hewitt and Bernice Brooks, Appellants,

v.

EAST FIFTH AVENUE SERVICE, INC., Appellee.

Fred M. SELKREGG, Appellant,

v.

Lucille MEYST, Appellee.

Nos. 470, 471.

Supreme Court of Alaska.

May 3, 1965.

Clifford J. Groh, John L. Rader and Ronald G. Benkert, Anchorage, for appellants Lucille Meyst, Earl Meyst, Sheryl Hewitt and Bernice Brooks.

David H. Thorsness and·Robert C. Erwin, Hughes, Thorsness & Lowe, Anchor-

age, for appellee East Fifth Ave. Service, Inc.

James J. Delaney, Jr., Delaney, Wiles, Moore & Hayes, Anchorage, for appellant Fred M. Selkregg.

Clifford J. Groh and John L. Rader, Anchorage, for appellee Lucille Meyst.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This is an action for personal injuries and property damage arising from an automobile collision. A car driven by Sheryl Hewitt stopped two car lengths from a parked wrecker which completely blocked Hewitt's lane of traffic while pulling another car out of a ditch. A car driven by Fred Selkregg was behind the Hewitt vehicle. As Selkregg passed the crest of a hill he observed the situation before him and hit his brakes as he was going about 25 to 30 miles per hour. It first appeared to Selkregg that the Hewitt car was going to go around the wrecker to the left, so Selkregg let off his brakes, then traveling about 15 to 20 miles an hour. Suddenly Selkregg observed the brake lights of the Hewitt car go on, indicating that it was stopping. He was then about 60 to 75 feet away. Selkregg started to swing out to the left to pass the Hewitt car and the wrecker, and then saw the lights of a car approaching him from the opposite direction. Realizing then that he could not pass on the left, Selkregg tried to drive to the right of the Hewitt car. His car went out of control, skidded on the icy road, and struck the Hewitt car in the right rear. At the time of the impact, the Hewitt car had been stopped for about five seconds.

The passengers in the Hewitt car brought this action for damages for personal injuries against Selkregg and East Fifth Avenue Service, Inc., the wrecker owner. Selkregg cross complained against the owner of the wrecker, on the ground that the wrecker was the proximate cause of the personal injuries sustained and of the damage to Selkregg's car.

A jury returned a verdict against Selkregg for the injuries suffered by the passengers in the Hewitt car. Recovery against the wrecker owner was denied. The passengers in the Hewitt car have appealed regarding the verdict denying recovery against the wrecker owner, and Selkregg has appealed as to the verdict awarding $20,000 damages to Mrs. Meyst, one of the passengers in the Hewitt car. We shall consider the Selkregg appeal first.

*The Selkregg Appeal*

Selkregg's first point is that the trial court erred in refusing to give his proposed instruction No. 8 on sudden emergency, which read as follows:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that are required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation.

"If, at that moment, he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after-events, it should appear that a different course would have been better and safer."

In the court's instruction No. 12 the jury was told what negligence consisted of. The court said that in determining whether or not Selkregg was negligent on the occasion in question, the jury had to determine whether Selkregg had exercised ordinary care in what he was doing or attempting to do at or immediately before the time of the accident. Ordinary care was defined as such care as a reasonable and prudent per-

son would have exercised under like circumstances.

■ In the light of this standard instruction on negligence, the proposed instruction on sudden emergency was superfluous. Under instruction No. 12, the jury had to rely upon their experience in human affairs and determine what a reasonably prudent person would have done if confronted with the situation that Selkregg was confronted with when he passed the crest of the hill and saw the wrecker and the Hewitt car before him. The jury had to judge Selkregg's behavior by the circumstances that existed at that time, as shown by the evidence. The jury was clearly told that those circumstances, which the jury might well have thought called for a quick decision because of sudden and unexpected peril, were to serve as a basis for the judgment they reached. Being so instructed, there was no reason to believe that a body of reasonable and intelligent persons was going to judge Selkregg's actions under different conditions that might have existed but did not, such as "calmer and more deliberate moments", to use some of the language from the requested instruction.

The requested instruction would have informed the jury in effect that one's duty was to exercise only the care that an ordinarily prudent person would exercise in the same situation, and that what one chose to do in such a situation was to be judged by the choice that might have been made by an ordinarily prudent person under the same conditions. In substance, this is what the jury was told by instruction No. 12. Proposed instruction No. 8 was unnecessary, and there was no error in not giving it to the jury.

Selkregg's second point on this appeal is that the court erred in denying his motion to strike the testimony of Dr. Rodman Wilson.

Dr. Wilson testified that Mrs. Meyst, one of the passengers in the Hewitt car, had suffered from a heart disease for a period of approximately eight years prior to the accident. He described her condition as "ischemic heart disease due to arteriosclerosis of the coronary arteries." Dr. Wilson said that there was very minor change in the direction of worsening of Mrs. Meyst's condition between electrocardiograms taken in 1953 and those taken after the accident in 1961; that he considered such minor changes to be the result of the natural progress of the disease over the eight-year period; that he was certain an electrocardiogram taken just before the accident would have been identical with one taken immediately following the accident; that the slight increase in chest pain that Mrs. Meyst experienced after the accident could have been caused by the emotional stress of the accident or it could have been the "natural up and downs of this type of heart disease"; and that there was no certain evidence that the injuries Mrs. Meyst sustained in the accident aggravated her heart condition.

We are not informed in Selkregg's brief what exclusionary rule of evidence is pertinent and should have been applied by the court in ruling on his motion to strike Dr. Wilson's testimony. Nor are we shown that the failure to grant the motion prejudiced his case. On this latter point we doubt that prejudice in the admission of such testimony could be established, because if the jury took Dr. Wilson at his word, it is more likely than not that they would conclude that the accident did not result in any damage to Mrs. Meyst's heart.

■ It is stated in Selkregg's brief that the evidence as to Mrs. Meyst's heart condition should have been struck because it was not shown by legally sufficient evidence that the heart condition was either caused or aggravated by the accident. What Selkregg appears to be arguing is, not that the evidence was irrelevant or otherwise inadmissible, but that it was insufficient to permit the issue of aggravation of the heart condition to go to the jury.[1]

1. McCormick, Evidence § 152, at 317 (1954); 1 Wigmore, Evidence § 29 (3d ed. 1940).

That issue was submitted to the jury under appropriate instructions.[2] However, it is not specifically argued here that the giving of such instructions was erroneous. Nor does it appear that the instructions were objected to below. In these circumstances, we need not consider whether the court erred in so instructing the jury.[3] This does not mean that we shall not consider plain errors, even though not objected to below, which are so substantial as to result in injustice.[4] But such a case is not present here. There was ample proof of injuries suffered by Mrs. Meyst, not related to her heart condition, which would justify the jury's verdict in her favor.

Selkregg's third point on this appeal is that the court erred in denying his motion for a mistrial.

At the conclusion of Dr. Wilson's testimony and during a court recess, Mrs. Meyst suffered a fainting spell and was taken to a hospital. Selkregg's motion for a mistrial was based upon the likelihood that some of the jurors saw Mrs. Meyst lying on the floor after she had fainted and saw her being carried from the courthouse on a stretcher, and upon the fact that the fainting incident had been reported in a radio broadcast.

The trial court has a wide discretion in determining whether a mistrial should be declared.[5] As in other instances where discretionary authority is exercised, we decline to interfere other than in exceptional circumstances and to prevent a miscarriage of justice.[6] We find no reason to interfere with the trial judge's discretion in this case. After the fainting incident, the judge told the jury that Mrs. Meyst was ill and would not be in court during the remainder of the trial, that her illness had nothing at all to do with the case, and that the jury was not to consider one way or the other the fact that Mrs. Meyst would not be present in court. We believe that this instruction to the jury was adequate to obviate any prejudicial effect that otherwise may have been created by Mrs. Meyst's illness.

As his fourth point, Selkregg contends that the court erred in refusing to give instructions relating to certain traffic ordinances and regulations as they pertained to the conduct of the driver of the wrecker.

An ordinance of the City of Anchorage and a state traffic regulation require a vehicle to be driven on the right side of the road, except in circumstances not

---

2. Instruction No. 33 provided in part:
 "[I]f negligence on defendant's part has been a proximate cause of aggravating a previously existing disability suffered by said plaintiff, that effect should be considered by you in fixing damages. * * *"
 Instruction No. 37 provided:
 "Plaintiff, Lucille Meyst, at the time of the accident had a heart condition.
 "The existence of disease does not prevent recovery, but, on the contrary, recovery may be had for any increase or aggravation of same.
 "The court instructs the jury that you should take into consideration both in the determination of your verdict and in estimating the amount of the plaintiff's damages any predisposition to disease aggravated by the injury if such appears to be the fact.".

3. Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964); Gregory v. Padilla, 379 P.2d 951, 955 (Alaska 1963); Reiten v. Hendricks, 370 P.2d 166, 169 (Alaska 1962); Cf. Davidsen v. Kirkland, 362 P.2d 1068, 1070 (Alaska 1961).

4. Gregory v. Padilla, supra note 3; Dowell, Inc. v. Jowers, 166 F.2d 214, 221, 2 A.L.R.2d 442 (5th Cir.), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759 (1948); 6 Moore, Federal Practice § 59.08 [2], at 3779–3780 (2d ed. 1953).

5. Harrison v. Garner, 379 P.2d 948, 950 (Alaska 1963).

6. Sparks v. Wakefield, 395 P.2d 271, 272 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964); Montgomery Ward v. Thomas, 394 P.2d 774 (Alaska 1964).

relevant here.[7] Another ordinance prohibits one from parking a vehicle upon a street or highway so as to leave available less than ten feet from the center line of the roadway for the free movement of vehicular traffic.[8] Finally, a state traffic regulation forbids one to stop, park or leave standing any vehicle upon the paved or main traveled part of the highway, except when the vehicle is disabled.[9] Selkregg requested the court, and the court refused to instruct the jury that violations of such ordinances and regulations by the driver of the wrecker would constitute negligence as a matter of law.

The ordinance and regulation which dealt with driving on the right half of the roadway were inapplicable. The wrecker was not being driven at the time of the accident. It was standing without a driver, across the line of traffic in the right hand lane, engaged in pulling a car out of the ditch. There was no error in failing to instruct as to a driving violation.

The ordinance and regulation relating to parking, if applied literally and if construed strictly, would appear to be pertinent in the circumstances of this case. Parking is defined by ordinance and state regulation as the standing of a vehicle, whether occupied or not, otherwise than temporarily to avoid traffic conflict or in obedience to traffic regulations, or while actually engaged in loading or unloading merchandise or passengers.[10] The wrecker was standing on the traveled portion of the highway, and it was not there temporarily for one of the purposes mentioned in the definition of "parking".

■■ Despite its literal application, we believe that the prohibition against parking was not meant to set a standard of care for one using a wrecker for the purpose for which it was intended. When a car slides off the road into a ditch or is otherwise disabled, the services of a wrecker are frequently required. The wrecker would not be able to fulfill its function of towing away a disabled vehicle or getting one back on the highway if it were not able to stop in the roadway adjacent to the location of the vehicle requiring assistance. Common sense requires us to construe the ordinance and regulation against parking as not forbidding the standing of a wrecker on the traveled portion of the roadway for the purpose of lending aid to a disabled vehicle. This was apparently the view of the trial judge. In instruction No. 25, which was not objected to by Selkregg, the judge stated:

"A wrecker truck, being used to restore a wrecked automobile to the highway, may stand on the traveled portion of the highway for a reasonable length of time, but must not occupy more of the highway than is reasonably necessary, and approaching traffic must be fully warned of the obstruction by lights, flags, guards, or other practical means."

We agree with the trial judge, and find no error in his refusal to instruct as to any violation of the parking ordinance and regulation.

■ The next point made by Selkregg is that the court erred in giving the following instructions:

*"Instruction No. 21*

"You are instructed that the ordinance of the City of Anchorage in effect on Fifteenth Avenue in February of 1961 provided as follows:

" 'No person shall drive a vehicle upon a street or highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of the street or highway, and in no

---

7. Anchorage, Alaska, Municipal Code § 19–80 (1957) ; 13 Alaska Adm.Code § 88 (1961).

8. Anchorage, Alaska, Municipal Code § 19–123 (1957).

9. 13 Alaska Adm.Code § 135 (1961).

10. Anchorage, Alaska, Municipal Code § 19–1, at 448 (1957) ; 13 Alaska Adm. Code § 2(y) (1961).

event at a speed which endangers the safety of persons or property.'

"*Instruction No. 24*

"If you should find from the evidence that a party to this action conducted himself in violation of any of the City ordinances or State Law just read to you, you may consider it as evidence of negligence on the part of the party so violating the ordinance, if such violation was a proximate cause to an injury or damage found by you to have been suffered by one of the parties."

Selkregg argues that these instructions were not justified because the evidence showed that he was driving at less than the posted speed limit, and there was no evidence to show that he had exceeded a speed that was reasonable and prudent under the circumstances, in violation of the quoted ordinance.

There was no error in giving these instructions. Selkregg testified that when he came over the crest of the hill and saw the wrecker and the Hewitt car before him, he first applied his brakes, and then when he thought that the Hewitt car was going to pass the wrecker on the left, he let off his brakes and was "closing on her [the Hewitt car]". The jury could have believed that under these circumstances Selkregg was not driving at a reasonable and prudent speed when he let off his brakes and ceased to reduce the speed of his car, even if for only a brief period of time.

 Selkregg's next point is that the court erred in giving instruction No. 31, which read as follows:

"You are instructed that though a party may have been negligent at the time and place of the accident complained of, there is no liability for such negligence and any injuries sustained by plaintiffs in the accident if, in fact, such negligence was not a proximate or efficient cause of the injuries complained of. Thus, if you find that East Fifth Avenue Service, Inc., through its employee, Phil Van Buren, was negligent and find that the defendant, Fred Selkregg, was likewise negligent but that his negligence was the proximate cause of the accident and injuries complained of, then plaintiffs and plaintiff in intervention and the defendant Selkregg are not entitled to recover of and from the defendant East Fifth Avenue Service, Inc., but are entitled to recover of and from the defendant Fred Selkregg."

Selkregg argues that the instruction was an affirmative charge with hypothesis, was argumentative and invaded the province of the jury in that it tended to imply that Selkregg was in fact negligent, and that the instruction was prejudicial.

The objections to the instruction that we shall consider are those made in the court below.[11] There Selkregg's counsel objected on the ground that the instruction overemphasized and singled out Selkregg's position in the case and amounted to a comment on the weight of the evidence.

We see in the instruction no such singling out or overemphasis as would have been prejudicial to Selkregg. Nor do we find in the instruction any comment on the weight of the evidence. There was no error in giving instruction No. 31.

 Selkregg's final argument is that the court erred in giving an unavoidable accident instruction.[12]

11. Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964).

12. Instruction No. 26 provided:
"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence."

In a recent decision we disapproved of such an instruction.[13] But we have also held that although an instruction on unavoidable accident may be erroneous, we shall not reverse for that reason unless prejudice has been shown.[14] No prejudice has been shown here.

*The Meyst Appeal*

Mrs. Meyst and the other passengers in the Hewitt car, who were awarded damages against Fred Selkregg, have appealed with respect to the jury's verdict denying them recovery from East Fifth Avenue Service, Inc., the owner of the wrecker.

The impact of Selkregg's car pushed the Hewitt car around the wrecker. As soon as the car came to a stop, Sheryl Hewitt, the daughter of Mrs. Meyst, got out of the car, ran back toward the wrecker, and spoke to the driver of the wrecker. When asked what she said, Sheryl Hewitt testified:

> "And I told him—well, I made a statement that I thought my mother was dying and that I needed some help quickly and for him to get his wrecker driver, his wrecker out of the way, if he'd had flares at the top of the hill, we wouldn't have had an accident."

The court excluded this testimony on the ground that it amounted to a conclusion by the witness as to the cause of the accident, and that this was a question for the jury to determine. The appellants claim that the court's ruling was error. They contend that Sheryl Hewitt's statement to the wrecker driver was a spontaneous exclamation and admissible as an exception to the hearsay rule.

Sheryl Hewitt's statement to the wrecker driver was spontaneous in the sense that it was made under the stress of nervous excitement immediately after the accident. But its admissibility is not governed by the spontaneous exclamation exception to the hearsay rule, because it was not hearsay. If the hearsay rule has no application, then the rule's exceptions have no pertinency.

Hearsay is involved when one attempts to get into evidence a statement that was made by one who is not testifying. That is not what was being attempted here. An attempt was being made to prove what Sheryl Hewitt said at the time of the accident, not through the testimony of some other person, but through the testimony of Sheryl Hewitt herself who was on the stand and subject to cross examination. What this witness testified she said on another occasion was not hearsay, because the fundamental basis for excluding hearsay—lack of opportunity for cross examination—did not exist.[15] If Sheryl Hewitt's testimony is inadmissible, it is because of some exclusionary rule of evidence other than the hearsay rule.

Appellee argues that the testimony was properly excluded because it was an expression of Sheryl Hewitt's opinion as to the cause of the accident, and if admitted, would have invaded the province of the jury. We agree that it was not improper for the court to have excluded Sheryl Hewitt's statement, but not for the reason stated by appellee. A witness does not usurp the function of a jury or invade its province by giving testimony in the form of an opinion, because the jury is under

13. Alaska Brick Co. v. McCoy, 400 P.2d 454 (Alaska, April 2, 1965).

14. Alaska Brick Co. v. McCoy, supra note 13; Mitchell v. Knight, 394 P.2d 892, 896 (Alaska 1964).

15. See Rule 63, Uniform Rules of Evidence, which provides that:
"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:
"(1) A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

no obligation to accept the opinion of the witness. The jury, and not the witness, decides the ultimate issues of proximate cause and fault.

Sheryl Hewitt's statement to the wrecker driver was to the effect that the accident would not have happened had the driver put flares at the top of the hill. The real objection to admitting such a statement is that it was superfluous. The jury had the duty, and it was able from the circumstances of the accident as related by witnesses, to make its own determination as to the proximate cause of the accident. In making that determination, the jury would receive no assistance from the witness's conjecture as to what might have happened had the wrecker driver done things which he in fact did not do. The purpose of opinion testimony is to aid the jury in arriving at the truth, and if the testimony does not furnish such aid it should be dispensed with because it is not needed.[16] Sheryl Hewitt's statement of opinion as to the cause of the accident was of no value to the jury, and therefore the court did not err in excluding it from the evidence.

Appellants also contend that the trial court erred in refusing to admit into evidence statements made by the driver of the wrecker. However, the specification of error in appellants' brief does not identify the statements referred to, and it is not at all clear from the extremely cursory reference to the point in the argument portion of appellants' brief exactly what we are being asked to consider. In these circumstances we are obliged to conclude that appellants did not consider the point to be of sufficient importance to merit our serious consideration.[17]

As their final point, appellants suggest that if we conclude in the Selkregg appeal that reversible error was committed by the trial court in giving instructions Nos. 26 and 31, that we also hold that such error would extend to the Meyst appeal. We need not consider this point further, since we have held in the Selkregg appeal that no reversible error was committed in giving those instructions.

The judgment is affirmed.

16. Oxenberg v. State, 362 P.2d 893, 900 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961); Grismore v. Consolidated Prod. Co., 232 Iowa 328, 5 N.W.2d 646, 656, 663 (1942); 7 Wigmore, Evidence §§ 1918, 1920, 1921 (3d ed. 1940); McCormick, Evidence § 11, at 23 (1954).

17. Merrill v. Merrill, 388 P.2d 259, 261 (Alaska 1964); McSmith v. McSmith, 387 P.2d 454, 455 (Alaska 1963); Thomson v. Wheeler Constr. Co., 385 P.2d 111, 114 (Alaska 1963); Gregory v. Padilla, 379 P.2d 951, 954 (Alaska 1963); McIntyre v. State, 379 P.2d 615, 617–618 (Alaska 1963); DeArmond v. Alaska State Dev. Corp., 376 P.2d 717, 725 (Alaska 1962); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962); City of Fairbanks v. Schaible, 375 P.2d 201, 211 (Alaska 1962); Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962); Veal v. Newlin, Inc., 367 P.2d 155, 156–157 (Alaska 1961).