**Patricia Ann LEWIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1112.**

Supreme Court of Alaska.

May 22, 1970.

---

John W. Hendrickson, of Hendrickson & Rowland, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., J. Justin Ripley, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ.

CONNOR, Justice.

Appellant was tried and found guilty of the charge of uttering a forged check contrary to AS 11.25.020.[1]

The pertinent facts of this case are these:

On October 21, 1968, the grand jury returned an indictment against appellant for uttering a forged check. The import of the charge was that appellant had, on or about July 13, 1968, passed a check she knew to be forged to Rudolph's Corsetry and Lingerie Shop in payment for a hostess gown. Trial proceeded on January 14, 1969, the state presenting a witness who testified that Miss Lewis had been positively identified from mug photos by the saleslady on duty at the dress shop at the time of the alleged uttering. The same salesclerk testified that she had positively observed appellant signing the check in question. The state also produced a witness who testified that the check in question was one of a number of blank checks that had been either lost or stolen from her purse in the summer of 1968. She further testified that she had neither signed nor authorized anyone else to sign these checks. The jury returned a guilty verdict on January 17, 1969.

Before trial and pursuant to a stipulation between the district attorney and defense counsel, appellant submitted to a lie detector test, which was administered on January 11, 1969. The terms of the stipulation, in substance, were that if it was shown by the test that appellant had told the truth in her denial of forging and uttering the check, charges against her would be dismissed. If, however, the test indicated that she had lied, the results of the test would be admissible into evidence. If the test was inconclusive, the parties were to assume their respective positions as if no test had been administered.

The attempt to administer the test was unsuccessful, owing to the physical condition of appellant. Corporal Bivens, who conducted it, was nevertheless allowed to testify as a defense witness about his attempt to test appellant, her cooperativeness, and the inability to perform the test. Neither the court nor the district attorney objected to the proffered testimony. The district attorney then conducted a cross-examination of Corporal Bivens. The trial court later ruled sua sponte that neither counsel could comment on this testimony in their final arguments to the jury, and even forbade them to mention that the witness had been present in the courtroom. Defense counsel made a timely objection to this ruling.

During the course of the trial, counsel for appellant made a motion to have the court appoint an expert witness on the subject of handwriting comparison, which motion was granted. After the witness, Marshall T. Jones, was called and had been cross-examined on his qualifications, the court ruled that he was not qualified for the purposes of this trial.

Appellant raises ten specifications of error in her brief. Of these, only five have been sufficiently dealt with to merit the attention of the court.[2] Of the

---

1. AS 11.25.020 provides as follows: "Forgery of evidences of debt or uttering forged evidence of debt. A person who, with intent to injure or defraud another (1) makes, alters, forges, or counterfeits a bank bill, promissory note, draft, check, or other evidence of debt issued by a person or by the federal government, the state, a state or territory of the United States, or another state, government, or country, or by a corporation, company, or person authorized by law to issue evidence of debt; or (2) knowingly utters, publishes, passes, or tenders in payment as true and genuine, a false, altered, forged, or counterfeited bill, note, draft, check, or other evidence of debt, or has in his possession that evidence of debt, with intent to utter or pass it as true and genuine, knowing it to be false, altered, forged, or counterfeited, is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years."

2. Rule 11(a) of the Supreme Court Rules states in pertinent part: "Appellant's Brief. * * * This brief shall contain in the order here stated the following: * * * (8) The argument, stating clearly the points of fact and of law being discussed, with reference to the

remaining five questions it is necessary to deal with only two for a proper disposition of this case. These are as follows: (1) Did the trial court err when it refused to allow defense counsel the right to comment upon the testimony of Corporal Bivens? (2) Did the trial court err when it refused to qualify and allow Marshall T. Jones, the handwriting expert, to testify?

### Restrictions on Appellant's Closing Argument

■ Appellant argues that the trial judge's preclusion of comment on the testimony of Corporal Bivens was in contravention of her right to the effective assistance of counsel under Article I, Section 11, of the Alaska Constitution.[3]

■ The basic rule is that an accused, by virtue of his constitutional right to be heard by counsel, is entitled to have counsel comment upon evidence submitted at trial.[4] It is only when evidence is irrelevant or not at issue in the case that comment may be forbidden.[5]

The court below allowed Corporal Bivens to testify as to the inconclusive nature of the polygraph test, and counsel for the state was allowed to cross-examine the witness. At no point in the course of the trial did the state object to the testimony

of Bivens. The court ruled, on its own motion, that neither counsel would be allowed to comment upon the testimony nor even to allude to the fact that Bivens had been present in the courtroom.

The state does not argue that appellant waived her right to have counsel argue on her behalf in summation. The state does contend that Bivens' testimony was irrelevant and, therefore, that the trial judge acted properly in disallowing comment on it. Smith v. State, 290 P.2d 170 (Okl.Cr.1955); Holmes v. United States, 84 U.S.App.D.C. 168, 171 F.2d 1022 (1948). In *Smith* counsel was not allowed to comment on information from a companion case which was mistakenly read to the jury, the court reasoning that since this evidence had no bearing on the charges brought against the defendant, it was not within the issues to be decided. In *Holmes,* the court refused to allow counsel to argue the sociological aspects of a rape case.

■ Failure by an opponent to object to evidence which might be inadmissible can result in a waiver of the objection. Hammonds v. State, 442 P.2d 39 (Alaska 1968); Jefferson v. City of Anchorage, 374 P.2d 241 (Alaska 1962); I Wigmore, Evidence § 18 (1940). Nevertheless, the trial judge may in certain situations withdraw such evidence from the jury's con-

---

pages of the record and authorities relied upon in support of each point. * * *"

We interpreted this rule to require that where a point is specified as error in a brief on appeal, thus raising such point as one to be relied upon, but such point is not given more than cursory statement in the argument portion of the brief, such point will not be considered by the Supreme Court. Failure to argue a point constitutes an abandonment of it. Associated Engineers & Contractors, Inc. v. H. & W. Const. Co., 438 P.2d 224 (Alaska 1968).

"If the adversary system is to function at the appellate level, counsel's participation and minimal compliance with the rules of this court are necessary." Pedersen v. State, 420 P.2d 327, 330 n. 5 (Alaska 1966).

3. "Section 11. Rights of Accused. In all criminal prosecutions, the accused shall

have the right to * * * have the assistance of counsel for his defense."

This guarantee includes assistance of counsel which is effective. Thessen v. State, 454 P.2d 341 (Alaska 1969); Anderson v. State, 438 P.2d 228, 230 (Alaska 1968).

4. People v. Don Carlos, 47 Cal.App.2d Supp. 863, 117 P.2d 748 (1941); Brooks v. State, 63 Ga.App. 575, 11 S.E.2d 688 (1940); People v. Marcelin, 23 A.D.2d 368, 260 N.Y.S.2d 560 (1965).

5. People v. Love, 56 Cal.2d 720, 16 Cal. Rptr. 777, 366 P.2d 33 (1961), rehearing denied, 17 Cal.Rptr. 481, 366 P.2d 809 (1961); People v. Carr, 163 Cal.App. 2d 568, 329 P.2d 746 (1958); Floyd v. State, 143 Ga. 286, 84 S.E. 971 (1915); People v. Morgan, 20 Ill.2d 437, 170 N.E. 2d 529 (1960).

sideration, even after it has once been admitted. McCormick, Evidence § 55 (1954), at 130. He is permitted to do this with certain types of evidence which is irrelevant. Whether the evidence here was relevant depends on whether it would have tended to establish a material proposition. Mitchell v. Knight, 394 P.2d 892 (Alaska 1964). The only purpose of which we can conceive for the admission of the testimony of Corporal Bivens would be that appellant's willingness to submit to the polygraph test would be evidence of her innocent state of mind or of her truthfulness when she testified in her own defense.

■ Evidence of the conduct of the accused is often admissible because it may indicate a consciousness of guilt, thus permitting an inference that the accused committed the crime of which he is charged. II Wigmore, Evidence § 273 et seq. (1940). It has been urged by some authorities that conduct of the accused which exhibits an innocent state of mind should, by a parity of reasoning, be admissible. Many courts have been resistant to the reception of such evidence of an innocent mind out of fear that it can be too easily feigned or the product of fabrication. II Wigmore, Evidence § 293 (1940). We need not decide that question in this instance. Even if a right to put in such evidence is assumed, it was not error to exclude from the jury's

consideration the testimony of Corporal Bivens. The result of his attempted test was inconclusive, for reasons which had nothing to do with the question of truth-telling by appellant. It tended neither to prove nor disprove appellant's claim. Her mere willingness to submit to a polygraph examination does not evidence innocence, because there are many other possible explanations which would account for it. We do not see how this evidence could have established a proposition material to the factual issues to be tried. Because the evidence was irrelevant, it was not error in the circumstances of this case to withdraw it from consideration of the jury and to bar reference to it by counsel.[6]

### Qualifications of the Witness as Handwriting Expert

There is no consensus as to what qualifies a witness to testify as an expert in the field of handwriting analysis.[7] Every imaginable quantity and quality of "expertise" has, in one court or another, been determined sufficient. General guidelines, however, have been established to aid us in determining the qualifications of expert witnesses.

■ It is not necessary that the witness devote full time to the subject matter of his expertise; it is sufficient that he has the requisite intelligence and reasonable contact with the subject matter to allow him to

6. We do not, in this case, express any opinion as to the admissibility, by stipulation or otherwise, or polygraph tests which have been brought to completion. That is quite a different problem area.

7. See, e. g., Nat'l Bank of Alaska v. McHugh, 416 P.2d 239 (Alaska 1966) (where witness' long experience in building industry qualified him to testify on standards of safety utilized by the building industry); Nelson v. State, 387 P.2d 933 (Alaska 1964) (where witness held master of science degree in wild life biology, had been employed as a game biologist for 10 years and had examined over 300 grizzly bear skulls, held competent to testify as to age of bear killed by appellant); Schweizer v. Schweizer, 16 Misc.2d 592, 184 N.Y.S.2d 84 (1959)

(where a credit union clerk with five years of experience allowed to testify on handwriting sample); State v. Cofer, 205 N.C. 653, 172 S.E. 176 (1934) (where two bank clerks with many years of experience were allowed to testify as experts); Connor v. Bowers, 184 Ark. 102, 41 S.W.2d 977 (1931) (where test laid down was whether special calling of witness gave him knowledge beyond that of normal person); First Galesburg Nat'l Bank & Trust Co. v. Federal Reserve Bank, 295 Ill.App. 524, 15 N.E.2d 337 (1938) (where expert testifying on genuineness of signature, had been a teacher of handwriting for 35 years, had done some work in determining genuineness of handwriting and occasionally read articles on subject, held qualified).

demonstrate his expertise with reasonable skill. First Galesburg National Bank & Trust Co. v. Federal Reserve Bank, 295 Ill. App. 524, 15 N.E.2d 337 (1938).

This court has previously had the opportunity to consider what constitutes a properly qualified witness. In Crawford v. Rogers, 406 P.2d 189 (Alaska 1965), the question was asked whether a game guide and pilot of some 22 years' experience as owner of a charter flying service, who had twice experienced accidents similar to the one in the case in which he was testifying, could testify as an expert, notwithstanding the fact that he had not seen the plane accident. The following statement is enlightening:

"The record bears out the judge's decision that Gay's opinion as to the cause of the crash was within the scope of Gay's special knowledge, skill and experience. It does not detract from the soundness of the judge's decision that Gay had never been employed commercially or officially to investigate airplane crashes or that it was not shown that he was recognized by others as an expert on such matters." 406 P.2d at 192.

The court went on to set down the following rule for determining the eligibility of a witness to testify as an expert:

"The true criterion in determining whether one qualifies as an expert witness and whether his opinion is admissible is not whether he employs his knowledge and skill professionally or commercially. The true criterion is whether the jury can receive appreciable help from this particular person on this particular subject." (Citations omitted.)  406 P.2d at 192.

Opinion testimony serves a very useful function in allowing the trier of fact to arrive ultimately at the truth. If the testimony fails to accomplish this end, it should be dispensed with, since it serves no useful purpose. Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430 (Alaska 1965). Conversely, if indeed the testimony will shed light on the conflicting claims that are presented, then its exclusion acts as a disservice to the jury.

Mr. Jones' exposure to handwriting comparison began as early as 1947, while he was serving as a military policeman in the Air Force. In 1949 he was attached to the Office of Special Investigations (OSI, Air Force) and attended an OSI school in Washington, D. C., where he devoted from six to ten hours of instructional time to handwriting comparison. In addition to his classroom instruction, he studied handwriting comparison manuals which had been prepared by the Air Force. For approximately 15 years following this OSI training, Mr. Jones served as an investigator for the military, often investigating forgery cases.

After leaving the service Mr. Jones was employed by the First National Bank of Anchorage as credit manager for three and one-half years, devoting his attention to problems involving handwriting comparison and forged documents. After leaving the bank Mr. Jones became loan control officer at the Elmendorf Federal Credit Union, where he continued to exercise his skills in examining forged instruments.

In all, Mr. Jones has had about 20 years' experience in examining handwriting samples. During this period of time he has had occasion to make comparisons on some 500 to 700 documents. He has functioned as an advisor in some 50 to 100 courts-martial as a handwriting expert; he also testified in Federal District Court in Anchorage in 1968 as a handwriting expert. Mr. Jones does not claim to be a handwriting analyst; rather, his skill lies in making comparisons between different samples of handwriting.

This witness amply complies with the requirements set down by this court in *Crawford*. As such, the jury was deprived of the opportunity to receive the benefit of his expert testimony, evidence that would have been of significant aid in helping the jury determine the appellant's guilt or innocence. Since the jury would have benefited from this assistance, the

proffered testimony should have been received.[8]

### Abuse of Discretion

Having decided that Jones was qualified to testify as an expert on handwriting comparison, we must now decide if the action of the trial judge in disallowing such testimony constituted an abuse of discretion.

Although the rulings of a trial court as to the admissibility of evidence are always subject to review, those rulings based upon the sound discretion of the court will be upset only when that discretion has been plainly abused. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546, rehearing denied 320 U.S. 808, 64 S.Ct. 25, 88 L.Ed. 488 (1943).[9] There is no general consensus as to what constitutes an abuse of discretion by the trial judge, and the tests applied by other courts are many and varied.[10] Certain standards do, however, emerge from a careful reading of the many cases on this subject. One such recognized test as to whether an abuse of discretion has occurred is whether the reasons for the exercise of discretion are clearly untenable or unreasonable. Malfait v. Malfait, 54 Wash.2d 413, 341 P.2d 154

(1959). This statement of the rule comports generally with the rule established by this court in Crawford v. Rogers, supra, where we stated that:

"We are unable to say that the judge was *clearly mistaken*—that he had abused his discretion in deciding that Gay's knowledge and experience were such that his opinion as to the cause of the accident would be of appreciable help to the jury in deciding the issue." 406 P.2d at 192. (Emphasis supplied.)

In reviewing the record, we are inexorably led to the conclusion that the trial court abused its discretion. Appellant made a timely motion for the appointment of an expert witness, which motion the trial judge granted. The trial judge was aware of the purpose for which this evidence was sought—namely, to contradict the state's witness—and was prepared to allow its admission on this narrow ground. He stated that:

"[I]f this witness' [the state's witness] testimony is going to be that she saw her [appellant]—looked over and saw her actually make out and sign this check, I'm going to let this in for whatever it might be worth if it's only the fact that she just saw her writing some-

8. Leavitt v. Gillaspie, 443 P.2d 61 (Alaska 1968); Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430 (Alaska 1965); Oxenberg v. State, 362 P.2d 893 (Alaska 1961), cert. den. 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961); VII Wigmore, Evidence § 1923 at 21 (3d ed. 1940).

9. Following the majority of jurisdictions, Alaska has rejected the notion that rulings on the qualifications of expert witnesses are not subject to review. In Pedersen v. State, 420 P.2d 327, 335 (Alaska 1966), we stated that "the decision in regard to the requisite qualifications of an expert witness is left to the trial court's discretion and is reviewable only for abuse."

10. Bowman v. Hall, 83 Ariz. 56, 316 P.2d 484 (1957) (abuse when substantial rights lost through mere technicalities); In re Knowlton's Estate, 118 Cal.App. 2d 374, 257 P.2d 1031 (1953) (abuse where manifest injustice has been done);

Smith v. Sheffey, 113 Cal.App.2d 741, 248 P.2d 959 (1952) (abuse where court's decision not supported by the evidence); Miller v. Republic Grocery, 110 Cal.App. 2d 187, 242 P.2d 396 (1952) (abuse of discretion when court has exceeded the bounds of reason in view of all the circumstances); Johnston v. Belk-McKnight Co., 194 S.C. 490, 10 S.E.2d 1 (1940) (abuse where action of court so opposed to sound discretion as to result in loss of rights of complaining party); Anderson v. Tall Timbers Corp., 162 Tex. 450, 347 S.W.2d 592 (1961) (abuse determined from construing findings of trial court in light of the record); Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808 (1927) (an abuse when court ignores recognized rules or principles of law or practice causing substantial injustice); Dashnow v. Myers, 121 Vt. 273, 155 A. 2d 859 (1958) (abuse of discretion for court to rule on grounds or for reasons which are clearly untenable).

thing and merely assumed she was writing it out, then I think it's going to be different ruling.

\*　　\*　　\*　　\*　　\*　　\*

"[S]he may very well have meant by that that she just saw her writing there and she assumed she made it out. Now, if she said she saw her write it, well, I think that's something entirely different."

Both attorneys stipulated to the fact that the state's witness would testify that she actually saw appellant signing the forged check. Upon learning this, the trial judge altered his position, seemingly concerned with the impact the expert witness would have upon the jurors. Because Jones had previously stated that he was unaware of any single instance in which he had made an incorrect comparison of handwriting samples, the trial judge ruled to exclude his testimony. He gave as the basis for his ruling the following reasons:

"Well, I think it's impossible to use this witness and by this ruling I'm not saying that he couldn't be of help—I think it's possible that he might be of help in a proper case and I—and I certainly am not in a position to [sic] saying that I'm overruling Judge Plummer because I think you'd have to consider all of these as vital—what's before the Court. It may very well be, under proper circumstances the Court would find that this man could be—could be helpful, greatly helpful to the jury, but I've got to decide here in view of the light of the evidence here as to what the impact is going to be. In view of that I'm going to hold that although it's possible that he could be of some help here, that the impact, based upon his testimony here, and particularly in regard to the fact that he feels that in all the cases he has ever examined that he's never come across something which would be questionable as to whether he could be right or wrong. He has limited experience, never having been full time. The obvious—this full time

position of this, the fact that he is—has no knowledge of the text books on this matter and the procedures and what not used by the experts who have qualified such as the FBI. I feel that the impact on the jury in the case here of—it is not the fact that if it was forgery that she was being charged with or of passing a forged entry—instrument. The impact would be much greater than the—on the jury—it could be much greater on the jury than justified in view of the particular facts or the issues in this case, as distinguished from another case."

It is obvious from the foregoing that the trial court misapplied the prerequisites for qualification as an expert witness in this state. The mere fact that Jones had not read extensively upon the subject matter of his proffered testimony is not dispositive of his qualifications as an expert witness. Furthermore, the trial judge was greatly impressed by the impact that Jones would have upon the jury. It is clear that counsel desired the testimony of an expert witness for just this purpose—to confront the jury with a person better qualified to pass upon the similarity of two signatures. If it is necessary to mitigate the impact of an expert witness upon a jury, there are available other procedures to achieve this end. Opposing counsel has an opportunity to cross-examine the witness on his qualifications as well as on his conclusions. In the present case, on voir dire examination of the witness, counsel so availed himself of this opportunity. The state, in presenting its case, had the opportunity to introduce its own handwriting expert; it declined to do so.

The trial judge may have felt that the testimony of Jones would have been unduly prejudicial against the state. We have previously stated that in determining whether to admit or exclude demonstrative evidence, the trial judge must balance the value of the evidence against the danger of undue prejudice, distraction of the jury from the issues, and waste of time. Love v. State, 457 P.2d 622 (Alaska 1969). We

are unable to distinguish between demonstrative evidence and expert testimony for purposes of this rule. In the case at bar the scales tip heavily in favor of the appellant. The introduction of testimony to the effect that appellant had not signed the check in question—in front of the state's witness or otherwise—constituted the major portion of the appellant's defense. There was nothing inherently prejudicial in the offered testimony. It was particularly a matter for the jury to decide whether or not to believe Jones' account of his ability. Nor would the testimony unduly consume the court's time. In short, the net effect of the testimony was not such that it could be described as detrimental to the opposition or to the conduct of the trial.

■ It should be clear that in concluding that the trial judge abused his discretion, we in no way depart from the general rule that an appellate court should not substitute its discretion for that of the trial court. In re Knowlton's Estate, 118 Cal.App.2d 374, 257 P.2d 1031 (1953). Nor do we intend, by this decision, to imply that abuse of discretion means bad or improper motive or in any way reflects upon the ability of the trial court. Brown v. Beck, 64 Ariz. 299, 169 P.2d 855 (1946). Rather, in holding that the trial judge abused his discretion, we mean that he either misconstrued or misapplied the rule concerning the amount of skill required to qualify one as an expert witness, where the rule had an important bearing upon appellant's case.

Although appellant has raised the issue of denial of the right to call witnesses on her behalf in violation of the Sixth Amendment of the United States Constitution and Article I, Section 11, of the Alaska Constitution, we need not reach this issue since this case is reversed and remanded on other grounds. For the same reason, we decline to rule on appellant's remaining two specifications of error, namely that the trial court erred in not granting her request for a new trial and

erred in allowing the prosecuting attorney to comment upon the fact that appellant had not produced an expert witness.

Reversed and remanded for a new trial.