Joan M. FERRELL et al., Appellants,

v.

Opal V. BAXTER et al., Appellees.

No. 1041.

Supreme Court of Alaska.

April 21, 1971.

Lloyd I. Hoppner, Fairbanks, for appellants.

Charles J. Clasby, Fairbanks, for appellees Melvin S. Graves and Sea-Land, Inc.

Before BONEY, C. J., and DIMOND, RABINOWITZ, and CONNOR, JJ.

## OPINION

CONNOR, Justice.

Among other things, this case presents important questions in the law of torts.

At about 11:00 a. m. on February 10, 1966, at Mile 351.2 on the Richardson Highway, approximately 12 miles south of Fairbanks, Alaska, a collision occurred between an automobile driven by Joan Ferrell and a Mack truck owned by Sea-Land, Inc., and driven by Melvin S. Graves.

Mrs. Ferrell, a housewife, had lived in Delta Junction, Alaska, since 1960, and had driven north to Fairbanks on the average of once a month. On the date of the accident, Mrs. Ferrell, her daughter Linda, and Mrs. Baxter, a friend, set out for Fairbanks in Mrs. Ferrell's 1961 Mercury Montego automobile to do some errands. Mrs. Ferrell drove; Mrs. Baxter sat beside her in the front seat; and Linda sat behind them in the center of the rear seat. Linda does not remember that the windshield wipers were on; however, the heater was operating. The three women had their coats

off, were relaxed, and chatted to pass the time during the long drive.

Melvin S. Graves was a truckdriver of considerable experience. He had driven in Alaska for twelve years for various trucking companies. In all parts of the state throughout his working life, he had handled semi-trucks and trailers similar to the vehicle involved in the accident. On February 10, 1966, he was driving a 1960 Mack tractor and pulling a flat-bed Fruehauf trailer.[1] Graves was bound south from Fairbanks for the U.S. Army's Fort Greeley with his load. From there he planned to continue on to Anchorage. He was quite familiar with the route, for he made the Anchorage-Fairbanks run on the average of twice a week.

The road was generally good, although ice made it slippery in spots. The yellow line down the center of the road was visible only occasionally. The sunless sky was overcast; the temperature was about 0° F.; and it was not snowing at the time of the accident, although snow began falling soon afterwards.

The Richardson Highway at Mile 351.2 curves from a west-northwesterly direction to a northwesterly direction in the space of 451.10 feet. The highway in this right-hand curve is tipped or "supered" eight degrees to the inside. The driving lane is about ten feet wide. Numerous trees and bushes, set 10 to 15 feet back from the pavement, line the roadway.

On the date of the accident the hardtop at Mile 351.2 was covered with ice and there was some snow on the pavement. The yellow line indicating the center of the highway was partially worn away and in need of repainting. It was also partially obscured by ice and snow. However, the traffic lanes were visible because numerous vehicles had packed the snow with prints of their passage. Because of the tendency of previous drivers to "cut" the curve, the traffic lanes had shifted about two feet to the northeast or inside. The obscured yellow line thus no longer represented the apparent center of the roadway.

As Graves entered the curve, he slowed down slightly from his prior speed which was thirty to forty-five miles per hour. He testified that he was within eight inches of the snow berm on his side of the road. This berm was a foot to a foot and one-half high. Graves was certain of these facts because, when the yellow line was not visible, he customarily judged his position on the roadway by his distance from the berm. In a ten-foot-wide lane, an eight-foot-wide vehicle eight inches from the berm would have sixteen inches leeway in the center of the road. Graves noticed no traffic in front of him or approaching him until he was just about to enter the curve.

At this time he first saw Mrs. Ferrell's automobile about 300 feet away, approaching from the south. His visibility was good; he could see past Mrs. Ferrell's car, although she was already halfway into the curve. Even though the yellow line was not visible, Graves testified that he knew Mrs. Ferrell was in the middle of the road, "just right about on the yellow line," straddling it with her left front wheel a little over on his side. She also appeared to him to be going thirty-five to forty miles per hour, too fast to negotiate the curve safely, due to his presence and her position so far over in the center of the road.[2] Graves'

---

1. The tractor was 20 feet long. The trailer was an additional 35 feet in length with a five-foot overlap where the trailer rode up over the "fifth wheel" on the back of the tractor. The truck was eight feet wide at its widest point, the edge of the trailer bed. The truck weighed between 15 and 16 tons empty. It was loaded with 15 tons of lumber which were held on with metal bands.

No part of the load projected beyond the flat-bed. The trailer had tandem axles on the rear wheels. Its tires were summertime tires without studs, while the tractor had summertime tires with studs in them on its eight drive wheels.

2. Although the testimony of Mr. Graves was inconsistent on the issue of Mrs. Ferrell's speed, he did offer testimony by which the jury could have inferred

impression was that Mrs. Ferrell would hit the cab or go underneath the trailer because she was going too fast to control her car, which was in his lane.

By this time Mrs. Ferrell was well into the curve. She apparently applied her brakes, but only succeeded in locking her wheels. At the same time she apparently attempted to turn her wheels, but to no avail. The net result was that she continued to slide straight into Graves' truck although her wheels were turned and locked.

Graves testified that he turned his truck to the right into the snow to get off the highway quickly and enable Mrs. Ferrell to pass him safely. He did not touch his brakes at all as he drove off the road, through the snow berm and into the bushes. He saw her pass as he went off into the snow, but immediately thereafter snow flew up, covering the windshield and totally obscuring his view. He felt the impact of Mrs. Ferrell's car hitting the left front wheels of the trailer. The trailer wheels went up over the hood of the car. The right wheels of his truck caught in the ditch by the side of the road and the truck turned over, finally coming to rest about 126 feet past the point of impact.

Mrs. Ferrell was traveling thirty-five to forty miles per hour when she first saw the truck just after she entered the curve. Mrs. Baxter testified this speed was moderate and that the automobile was not over the center line. The ladies were talking at the time but, nevertheless, Mrs. Baxter felt Mrs. Ferrell was alert and keeping her attention on the business of driving. Although Linda was not paying particular attention to the road, she, too, believed the car was not over the center line.

From the first moment Mrs. Ferrell saw the truck, she had a clear view of it up until the moment of impact. The lower part of the wheels and road surface alone were hidden by the low snow berm. Mrs. Ferrell testified that the truck seemed to be

over the center line on her side of the road. The snow berm was right up to the edge of the pavement. There was no room for the car to pass to the right of the truck on the road. Therefore, Mrs. Ferrell attempted to turn the car to the right and go into a snowbank.

At about this time when the truck was three or four car lengths away, Mrs. Baxter first saw it. The truck appeared to be going too fast and taking up too much of the curve to permit them to get by safely because it was in their lane. She saw Mrs. Ferrell try to turn to the right to avoid a collision.

Although she had no recollection of doing so, Mrs. Ferrell testified she "must have" unintentionally put her foot on the brake, which threw her car into a slide and thus prevented her from driving off the road.

Rudy Voigt, a witness for Mrs. Ferrell, placed the point of impact at the center of the road. A State Trooper, Sgt. Lowell Janson, a witness for Mr. Graves and Sea-Land, placed the "point of maximum effect" several feet inside the southbound lane.

As a result of the collision Mrs. Ferrell and Mrs. Baxter suffered serious personal injuries. Linda Ferrell suffered minor injuries. The Ferrell automobile suffered extensive damage. The truck suffered minor damage.

Mrs. Baxter sued Mrs. Ferrell, Mr. Graves and Sea-Land, Inc., for her personal injuries. Her husband sued for his derivative claims. Mrs. Ferrell cross-claimed against Mr. Graves and Sea-Land for her personal injuries. Her husband sued Graves and Sea-Land for his derivative losses. Linda Ferrell sued Graves and Sea-Land for her personal injuries. Sea-Land cross-claimed against Mrs. Ferrell for property damage to the truck. After a jury trial Mrs. Ferrell was found negligent. Mrs. Baxter was awarded $25,000 in

that Mrs. Ferrell was going too fast under the circumstances. Under the rule of Otis Elevator Co. v. McLaney, 406

P.2d 7, 10 (Alaska 1965), this court must view the evidence in the light most favorable to appellee.

damages. Mr. Baxter was awarded $2,000. Sea-Land was awarded $855.25. Mr. and Mrs. Baxter were awarded $3,550 in attorney's fees against Mrs. Ferrell. Mr. Graves and Sea-Land, who maintained a common defense, were awarded attorney's fees of $7,100—$3,550 against Mrs. Ferrell and $3,550 against the Baxters.

Mr. and Mrs. Ferrell and Linda have appealed the judgment alleging numerous errors.

### 1. The Effect of the Violation of a Traffic Regulation.

Appellants objected to the trial court's giving Instruction No. 10, which stated:

"You are instructed that the law of the State of Alaska as it applies to this case is as follows:

'88. Drive on Right Side of Roadway—Exceptions.

(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

2. When the right half of the roadway is closed to traffic while under construction or repair;

3. Upon a roadway designated and signposted for one way traffic.

(b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right hand lane then available for traffic, or as close as practicable to the right hand curb or edge of the roadway, except when overtaking or passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.' (Alaska Administrative Code, Title 13, Section 88, Now Title 13, Section 104.31.)

'126. Basic Rule and Maximum Limits.

(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements *and* the duty of all persons to use due care.

\* \* \* \* \* \*

(d) The driver of every vehicle shall, consistent with the requirements of paragraph (a) drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching a hill crest, when travelling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.' (Alaska Administrative Code, Title 13, Section 126.)

'Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following herewith shall apply:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from said lane until the driver has first ascertained that such movement can be made with safety.' (Alaska Administrative Code, Title 13, Section 96.)

"If you find from a preponderance of the evidence that any defendant violated any of the provisions of the law just read to you and that any such violation proximately caused the accident in question, you are instructed that the plaintiff has established a prima facie case that defendant was negligent. This prima facie case of negligence is not conclusive. It may be overcome by other evidence showing that under all the circumstances

surrounding the event in question defendant's conduct was excusable or justifiable.

"To show that a violation of law was excusable or justifiable, so as to overcome this prima facie case of negligence, in the event you find that a defendant violated any of the foregoing provisions of law, the defendant must convince you, the jury, that any such violation of law resulted from causes or things beyond the control of the defendant and that he was not negligent.

"The fact that a person skidded and lost control of the vehicle, if this be a fact, is not, standing alone, such excuse or justification. The burden would be on such person to convince you that no negligent act or omission caused the skid.

"If, in accordance with these instructions, you find that a defendant has violated the law and that any such violation proximately caused the accident in question, and you further find that defendant has failed to so excuse or justify such violation of law, then you must find that the defendant was negligent."

The source of this instruction was Rogers v. Dubiel, 373 P.2d 295 (Alaska 1962). This case has caused much confusion. The divergent interpretations accorded it are mirrored in the different readings by the attorneys in this case. Appellants view *Rogers* as a case of res ipsa loquitur. Appellees view it as setting forth the consequences for the violation of a traffic regulation. We take this opportunity to further explain the rule.

Rogers v. Dubiel must be viewed as prescribing the consequences in a negligence action *of the violation of a traffic law.* The facts of that case indicate that defendant's automobile skidded out of its lane and struck the plaintiff, who was standing on the right side of the roadway. The unsafe movement of a vehicle from its proper lane of travel was a violation of Title 13, Alaska Administrative Code, § 96 (§ 2–309 of the Traffic Regulations, 1958), which read

substantially the same as set out in Instruction 10, *supra.* *Rogers* held that

"The law required the defendant to operate his vehicle as nearly as practicable entirely within the lane of traffic along which he was proceeding, and that he not depart that lane until he had ascertained that he could do so with safety. This he failed to do." 373 P.2d at 296.

The law was clearly one which, in the court's view, established a reasonable behavioral standard. Moreover, the facts of the case indicate with equal clarity that the law was designed at least in part to protect bystanders from personal injury caused by cars leaving their driving lanes in an unsafe manner. Thus it was correctly applied in that case.

Because of the peculiar nature of that accident, the defendant was in a much better position to explain his actions than was the plaintiff, whose back was turned to the defendant's car. As the opinion stated:

"It is true that counsel for plaintiff might have questioned defendant concerning these aspects when he had defendant on the stand as an adverse witness. However, under the general view that we take, it was not necessary that he do so. Plaintiff had established a prima facie case when he showed that he was standing on the shoulder of the street in a location where he had a legal right to be *and was injured by the departure of defendant's vehicle from the lane of traffic it was required to use.* Thereafter the burden was on defendant to convince the trier of the facts that he was not negligent.

\* \* \* \* \* \*

" \* \* \* The fact that defendant failed to mention in his testimony anything that could be classified as an affirmative act of negligence is not sufficient to relieve him from responsibility. *The controlling fact is that his automobile skidded out of his control and into a portion of the roadway that it was not permitted to enter except with safety."*

373 P.2d at 297–298. (Footnote omitted. Emphasis supplied.)

It is noteworthy that the last-quoted sentence is a direct paraphrase of the traffic regulation violated by the defendant. It is, therefore, clear that the controlling fact in Rogers v. Dubiel was that the defendant had violated the traffic regulation. Once the plaintiff established this fact, the burden shifted to the defendant to excuse or justify his violation. Since he failed to do so, the trial court was held to have erred in finding that the plaintiff had not proven his case.[3] For that reason, this court reversed the judgment.

The opinion in *Rogers* discusses at length the fact that the plaintiff could not show how defendant *was* negligent as easily as defendant could show why he was *not*. However, such discussion was doubtless inserted to explain why the new rule promulgated in *Rogers* was a fair one. It is certainly fairer to require one who violates the law to excuse or justify his actions than to require an innocent bystander to show why there was no excuse or justification. Moreover, in many cases, such as *Rogers*, the defendant will be more easily able to explain his action—or inaction—than can the plaintiff. In any event, the controlling fact of the case was the regulatory violation.

The case cited as directly supporting the court's decision in *Rogers* was Bergstrom v. Ove, 39 Wash.2d 78, 234 P.2d 548 (1951). In that case, as in *Rogers,* the defendant skidded onto the shoulder of the road and injured the plaintiff who was standing there. Driving a vehicle with one or more wheels off the road, unless excused, was a violation of a Washington state statute.[4] The court held,

"The reason why skidding in such cases establishes a *prima facie* case of negligence is because it has resulted in a violation of the law of the road, which requires an excuse." 234 P.2d at 552. (Italics in original.)

*Bergstrom* was in turn based on a third case, Martin v. Bear, 167 Wash. 327, 9 P. 2d 365 (1932). In that case the defendant's automobile crossed the center line and caused an accident. Such an unexcused departure from the assigned lane was a violation of a statute and therefore held to be negligence per se.

"If a car while driven on the wrong side of the highway collide with another car, the burden is upon the driver upon the wrong side of the highway to justify his violation of the law of the road. Berry on Automobiles (2d Ed.) § 171, p. 206.

\* \*. \* \* \* \*

"The law of the road, however, required respondents' automobile to keep to the right of the center of the highway. The presence of that automobile on the wrong side of the highway caused an injury and created liability unless excusable or justifiable. While respondents were excusable if, without fault on their part, their automobile skidded across center line of the highway, the burden of proving excuse or justification was upon them." 9 P.2d at 365, 366.[5]

Thus from an examination of the precedential bases of Rogers v. Dubiel emerge two rules: 1) A violation of a statewide administrative traffic regulation adopted pursuant to statutory authority[6] must be equated with a violation of a traffic statute itself. 2) The violation of ei-

3. The trial in *Rogers* was before a judge without a jury.

4. Rem.Rev.Stats., vol. 7A § 6360–96.

5. The majority in *Martin* went on to hold: "Ordinarily facts which will excuse technical violation of the statute must result from causes or things beyond the control

of the person charged with the violation." 9 P.2d at 366. We decline to adopt such a narrow definition of "excuse", but instead rely upon that found in Restatement (Second) of Torts § 288A (1965). See discussion, *infra*.

6. AS 28.05.030.

ther an applicable traffic statute or regulation which has been adopted by the court as a standard of reasonable behavior is negligence per se.

Rogers v. Dubiel and its Washington precedents form the backbone of our Alaska rule. While other Alaska cases amplify the basic principle of *Rogers,* that case remains the originative case in this state. However, an examination of the other Alaska cases on the subject will further. elucidate the *Rogers* doctrine.

In the first place it is clear that recent Alaska cases have also viewed Rogers v. Dubiel as a case prescribing the tort consequences for a traffic violation. Mallonee v. Finch, 413 P.2d 159, 162 n. 11 (Alaska 1966); [7] Maddocks v. Bennett, 456 P.2d 453, 460 (Alaska 1969); Bertram v. Harris, 423 P.2d 909, 915 (Alaska 1967).[8]

Quite separate and distinct are those cases dealing with the doctrine of res ipsa loquitur. The latter doctrine is utilized only in cases with incomplete factual descriptions. Evans v. Buchner, 386 P.2d 836, 837

(Alaska 1963). In Crawford v. Rogers, 406 P.2d 189, 193 (Alaska 1965), we said:

"Res ipsa loquitur means 'the thing speaks for itself.' As a rule of law in an action involving an accident where a claim of negligence is made, it permits a jury, on the basis of experience or common knowledge, to infer negligence from the mere occurrence of the accident itself. The jury is permitted to conclude that such an accident would not ordinarily occur unless someone had been negligent."

As the Hawaii Supreme Court said in Guanzon v. Kalamau, 48 Haw. 330, 402 P. 2d 289, 291 (1965),

"The doctrine, where applicable, is a procedural device which operates to shift the burden of going forward with the evidence to the defendant without relieving plaintiff of the burden of proof. It relieves the plaintiff from showing any particular acts of negligence and places on the defendant the burden of explaining that the accident did not occur from want of care on his part. 61 C.J.S. Motor Vehicles § 511(3) b, p. 205." [9]

---

7. At 413 P.2d 162 n. 11 the court said in part:
 "In his instructions to the jury, the trial court properly instructed the jury as to the effect of a violation of a highway regulation in the event they concluded appellee had in fact violated a highway regulation. The court's instructions correctly embodied the standard adopted in Rogers v. Dubiel, 373 P.2d 295 (Alaska 1962)."

8. In Evans v. Buchner, 386 P.2d 836, 837 (Alaska 1963), plaintiff alleged that defendant left his lane when he could not do so safely, thus violating that regulation set forth in Instruction 10, *supra,* and thereby causing the accident. This court held that as a matter of law there was no regulatory violation because plaintiff failed to show that defendant could not in fact leave his lane safely. Thus Rogers v. Dubiel, 373 P.2d 295 (Alaska 1962) was inapplicable.

9. The New Jersey Supreme Court in Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 141 A.2d 301, 306-307, 66 A.L.R. 2d 680 (1958) stated:

"*Res ipsa loquitur* * * * symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect. The rule has its foundation in probability and the procedural policy of placing the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances. The presumption arises where the circumstances furnish reasonable grounds for the inference that if due care had been practiced by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If the circumstances are such as will, unexplained, sustain the inference of negligence as reasonably probable, a *prima facie* case is made, and the issue goes to the jury."

On the other hand, traffic laws, including statutes, regulations, and local ordinances, serve two purposes in this state. First, they provide criminal penalties, often minor, for their violation. Second, they set the standard of a reasonable man and thereby require a finding of negligence in a tort action if the plaintiff can prove that the defendant committed an unexcused violation. In terms of elementary tort principles, traffic laws prescribe the legal duty or standard of care owed by the driver to the general public who may be injured if such standard is not met. By the same token, a violation of a statute, regulation, or ordinance is a breach of that duty and, unless excused, results in a prima facie showing that the defendant did not act towards the plaintiff as would a reasonably prudent driver.[10]

Of course, issues involving the elements of 1) duty or 2) breach of that duty are traditionally considered to be separate and distinct from the issues of 3) whether the defendant committed any act or omission at all, 4) whether such act or omission was the actual cause of the injury, or 5) whether it was the proximate cause thereof. Thus, while res ipsa loquitur procedurally assists the plaintiff in his proof in certain incomplete factual settings, the violation-of-statute doctrine assists him to establish a firm *duty* to impose upon the defendant.[11]

In Maddocks v. Bennett, 456 P.2d 453, 460 (Alaska 1969), we said:

"Even less applicable to the present case than res ipsa loquitur is appellee's analogy to violation-of-statute cases, e. g., Rogers v. Dubiel, 373 P.2d 295 (Alaska 1962). These cases are only concerned with the negligence of the act and not with causation in fact. * * * Violation of statute cases really have nothing to do with causation * .* * [A] violation of a statute only determines if the actor's conduct is negligent. A reasonable man is presumed to be a lawful one. Whether the unlawful and hence negligent actions cause the damage is a separate inquiry." [12]

In Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430, 435–436 (Alaska 1965), this court affirmed the use of discretion of the trial court in giving two instructions permitting, but not requiring, the jury to find that the violation of an ordinance was "evidence of negligence." [13] · We express

---

10. Although the term "prima facie case" is not wholly unambiguous; 9 J. Wigmore, Evidence (3d ed. 1940), § 2494; it was correctly utilized in one of its accepted meanings in Instruction 10. By the use of that phrase the court intended to imply that when the plaintiff establishes a prima facie case, "[t]hat is enough to satisfy the burden of proof when the evidence is not in conflict." Amtorg Trading Corp. v. Commissioner of Internal Revenue, 65 F.2d 583, 586 (2nd Cir. 1933). *See also* Wyoming Wool Marketing Ass'n v. Woodruff, 372 P.2d 174, 179, 3 A.L.R.3d 802 (Wyo.1962).

11. It is not uncommon to find both doctrines involved in a single case. However, the fact that both may be utilized together does not mean that they must be. Nor does the convenience of simultaneous utilization support a merger of the two entirely separate doctrines.

12. *See also* Bertram v. Harris, 423 P.2d 909, 914 (Alaska 1967).

13. The court approved the following two instructions:
 *"Instruction No. 21*
 "You are instructed that the ordinance of the City of Anchorage in effect on Fifteenth Avenue in February of 1961 provided as follows:
 'No person shall drive a vehicle upon a street or highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of the street or highway, and in no event at a speed which endangers the safety of persons or property.' "
 *"Instruction No. 24*
 "If you should find from the evidence that a party to this action conducted himself in violation of any of the City ordinances or State Law just read to you, you may consider it as evidence of negligence on the part of the party so violating the ordinance, if such viola-

no opinion as to the merits of the trial court's decision in that case in refusing to permit those particular ordinances to provide standards of reasonable behavior. Nor do we say that we would affirm that decision were it directly before us today.

However, we do not and reaffirm what this court did in that case when it drew no distinction between the violation of a statute and the violation of an ordinance. It is clear that the violation of either is of equal effect in civil actions in this state.

We also note with approval that the effect of the holding in *Meyst* was to give the trial court a certain amount of discretion in determining whether the applicable traffic law establishes a standard of reasonable behavior. Although, as discussed at greater length below, this court strongly presumes that most traffic regulations do in fact provide standards of reasonable behavior, it is conceivable that in highly unusual cases certain traffic laws may be so obscure, oblique or irrational that they could not be said as a matter of law to provide such a standard. In the event the courts of this state are faced with such arbitrary and unreasonable laws, they may provide that violations thereof merely indicate some evidence of negligence or no evidence at all. But it should be emphasized that we do not intend to signify a wholesale frontal assault on our wise and comprehensive traffic laws.[14]

An earlier Alaska case, Rogge v. Weaver, 368 P.2d 810 (Alaska 1962), concerned another collision on the Richardson Highway between two trucks that met head on. The facts of the accident were somewhat similar to those in the case at bar. The plaintiff produced evidence that his truck was on the extreme right-hand side of the highway, well within his lane. He also produced evidence that the highway was sufficiently wide for the two trucks to meet and pass safely. The defendants failed to present any evidence at all. The trial court, sitting without a jury, dismissed the case. We held:

"At the close of plaintiff's case he had established prima facie that his vehicle was not at fault and had raised the presumption that the collision would not have occurred but for the fact that defendants' vehicle was being operated across the center line of the highway in violation of territorial law and highway regulations.

" * * * The presumption was that the collision couldn't have happened unless defendants' vehicle had been operating across the center line of the highway. This would have been a violation of law requiring adequate explanation to be excused." 368 P.2d at 816.

■ This court went on to hold that the defendants' motion to dismiss should have been denied. Defendants should have been given an opportunity to present evidence rebutting the presumption of negligence arising from their violation of the law. If the defendants then failed to present any evidence to excuse the violation, the plaintiff would be entitled to judgment in his favor on the basis of the presumption above. By so holding, this court clearly foreshadowed its later decision in *Rogers* that a violation of a traffic law was negligence per se. Even more important, the court indicated one major difference between negligence per se and mere evidence of negligence. Assuming causation is shown, if a plaintiff proves that a defendant violated a traffic law prescribing a standard of reasonable behavior, and the defendant produces nothing to the contrary, plaintiff's case is then "sufficiently strong to warrant a judgment in his favor." 368 P.2d at 816. However, if the law is not held to establish a standard of reasonable behavior and its violation is further held merely to constitute evidence

tion was a proximate cause to an injury or damage found by you to have been suffered by one of the parties."
401 P.2d at 435–436.

14. *See* note 22 and accompanying text, *infra.*

of negligence which may, but need not, be considered determinative by the trier of fact, the judge need not render a verdict for the plaintiff.

In the recent case of State v. Phillips, 470 P.2d 266, 269 (Alaska 1970), this court excused a statutory violation of the regulation cited in Instruction 10, *supra,* as Alaska Administrative Code, Title 13, Section 96. Plaintiff's decedent's automobile skidded out of its lane and across the highway, thereby violating the above regulation, causing the accident and ultimately her death. Alleging that a rut in the road was the direct cause of the skid, the plaintiff, administrator of decedent's estate, sued the State of Alaska, the road being a state highway. Affirming the finding of the trial court that the state was negligent, we said:

> "Viewed in isolation, the departure of decedent's vehicle from its lane of traffic constituted evidence of contributory negligence under Rogers v. Dubiel, so rendered inappropriate reliance on any presumption of due care. In the case at bar, however, there is ample evidence that antecedent negligence on the part of the State of Alaska caused Patricia Phillips' vehicle to leave its assigned lane of traffic. This same antecedent negligence, combined with the then icy condition of the Seward Highway, furnished substantial evidence of excuse for decedent's violation of applicable highway regulations, overcoming the inference of contributory negligence from violation of highway regulations." 470 P.2d at 269 (footnote omitted).

Although the court in that case set forth no general rule on the subject, the holding clearly indicates that certain violations may be excused. One such excuse can be that the violation was caused by outside forces, either man-made or natural, over which the actor had no control.[15]

From this discussion of Alaska precedents, viewed in both their historic and analytical contexts, there emerges a quilt-like pattern of the law in this state on this subject up to the present. But as yet there has been no comprehensive opinion setting forth the civil consequences of the violation of a traffic statute, regulation, or ordinance. We take this opportunity to do so. However, before setting forth the general rule to be followed in the future, we pause a moment to examine the theoretical underpinnings of the doctrine of statute-based negligence and to compare the differing views of the various jurisdictions.

█ In promulgating traffic laws and regulations the legislature, sometimes expressly, but more often by implication, indicates a policy that a certain class of individual be protected from a certain type of harm. For example, in the case at bar the regulation requiring drivers to remain within their lanes was at least partly designed to protect oncoming motorists against head-on collisions. By enacting the regulation pursuant to statutory authority, the Department of Public Safety has implicitly indicated that no reasonable person would move from his lane before ascertaining it could be done safely. Therefore, before a plaintiff is entitled to an instruction defining the violation as negligence per se, he must first demonstrate that he is among the protected class and, second, that the injury was caused by a harm against which the law was designed to protect.

Other jurisdictions vary considerably in the effect given to the breach of a traffic law.[16] The majority hold that it is negligence per se. However, a substantial minority hold that it is merely evidence of negligence, which may or may not be considered.[17] In the latter jurisdictions it

---

15. *See also* Restatement (Second) of Torts § 288A(2) (c) (1965).

16. *See generally* W. Prosser, Handbook of the Law of Torts § 35 (3d ed. 1964);

2 F. Harper and F. James, The Law of Torts § 17.6 (1956).

17. "A few states hold that the violation of an ordinance, as distinguished from a

is argued that it amounts to judicial legislation for the courts to impose such potentially burdensome civil liabilities, unless the legislature has specifically permitted them to do so. It is also argued that the courts are unfair in strictly applying the doctrine and holding that no reasonable man would violate "ill conceived, or hastily drawn or obsolete" statutes. 2 F. Harper and F. James, The Law of Torts § 17.6 at 999 (1956).

Virtually no jurisdiction excludes such a violation from considertion altogether, if the statute is relevant. Statutes, regulations, and ordinances comprising the rules of the road represent the fundamental guidelines by which society transports people and things in an orderly manner from place to place. To abrogate these rules would not only lead to legal chaos, it would drastically impair the functioning of our necessarily mobile society and economy.

Courts universally notice this fact, but vary considerably in the strictness to which they hold that a statutory violation is negligence in itself. Once a violation has been proved, the defendant can offer any one of several defenses. For example, the contributory negligence of the plaintiff will be such a defense. Bertram v. Harris, *supra* 423 P.2d at 914; W. Prosser, Handbook of the Law of Torts § 35 at pages 202, 435 (3d ed. 1964).

Certain valid excuses may also constitute adequate defenses. Some jurisdictions are much narrower than others in the types of excuses they will permit the defendant to prove to justify his violation of the law. Views range all the way from a strict holding that impossibility is no excuse,[18] through the view permitting admission of evidence that the violation was excusable,[19] through the admission of evidence of excuse or evidence of due care to comply with the statute,[20] to the view which follows the "emerging doctrine of justifiable violation" and permits additional justifications.[21] However, the fact remains that unless the defendant offers evidence of some defense, judgment for the plaintiff will be required in those jurisdictions in which a violation is negligence in itself.

Critics argue that by making excuses admissible by judicial fiat absent express legislative consent, the courts engage in additional judicial law-making. Indeed this is so. But the courts cannote operate in a vacuum. There must be standards to guide them. The need for a rule of law persists even though the legislature may not have spoken on the subject.

The need for a societal-governing norm in this field is clear. Traffic rules have always been violated and injuries sustained as a result. This practice will undoubtedly continue whether or not civil liabilities are imposed. But people must be able to govern their affairs according to known standards. They must be able to protect themselves in advance, currently by purchasing defensive insurance, perhaps in the future by some other means. They must also be able to take steps to make themselves

---

statute, is at most evidence of negligence. *See* for example Rotter v. Detroit United R. Co., 205 Mich. 212, 171 N.W. 514 (1919); Carlock v. Westchester Lighting Co., 268 N.Y. 345, 197 N.E. 306 (1935)." Restatement (Second) of Torts Appendix § 288B at 373 (1966).

18. Andrew v. White Bus Line Corp., 115 Conn. 464, 161 A. 792 (1932); W. Prosser, Handbook of the Law of Torts § 35 at 200 (3d ed. 1964).

19. Excuse may include impossibility, that the violation was caused by circumstances over which the violator had no control, or that the violation was due to a sud-

den emergency not of the violator's own making. 2 F. Harper and F. James, The Law of Torts § 17.6 at 1008 (1956).

20. Evers v. Davis, 86 N.J.L. 196, 90 A. 677 (1914); Restatement (Second) of Torts § 286 (1965).

21. "These include the reasonableness of the statutory standard (both generally and as applied to the facts of the particular case); the reasonableness of alternative precautions; the prevalence of official nonenforcement; the facts of customary breach, subsequent repeal, and the like." 2 F. Harper and F. James, The Law of Torts § 17.6 at 1009 (1956).

whole once again after sustaining injuries and property damage. Since the courts must settle such disputes, to the judiciary falls the task of establishing guidelines in the absence of an express legislative mandate.

To call this judicial legislation does not solve the problem. When confronted with an important legal question, with no direct guidance in positive or decisional law, the courts must exercise a creative role. We must set up these rules as best we can, respectfully leaving it to the legislature to correct by positive legislation what it may consider our errors.

Clarity, certainty, and justice are the goals we seek. It is certainly fair to require all drivers, who must be tested on these traffic laws and regulations before they may obtain driver's licenses, to know and obey the rules of the road. In few areas is the ancient presumption of universal legal knowledge more fairly applied. It is both just and accurate to presume that all reasonable drivers know and obey the law, and to hold them civilly as well as criminally responsible for any unexcused violations thereof.

Confusion has reigned too long in this state about the consequences of a violation of a rule of the road. Because each previous opinion of this court has dealt only with certain aspects of the violation of traffic laws, many issues concerning the effect of a violation have remained unresolved. This in turn has created situations in which counsel for either plaintiffs or defendants, relying on a claimed confusion in the case law, have been motivated to litigate fully numerous cases which might otherwise have been settled. Accident litigation represents a large portion of the caseload of the court system. Uncertainty in this area, therefore, places a needlessly heavy burden on the judicial machinery which could be relieved by any exposition which would clarify the standards and rules to be applied. The time has come to articulate a comprehensive statement in this area. This is the fairest course of action for all concerned. As Mr. Justice Holmes wrote in The Common Law 110–11 (1881):

"Again any legal standard must, in theory, be one which would apply to all men, not specially excepted, under the same circumstances. It is not intended that the public force should fall upon an individual accidentally, or at the whim of any body of men. The standard, that is, must be fixed."

The rules we adopt to be applied in this state in trials held after the date of this opinion are those set forth in the Restatement (Second) of Torts §§ 286, 288A, and 288B (1965). Trial courts should apply these rules whether the actor is alleged to have violated a traffic statute, regulation, or ordinance.

Restatement (Second) of Torts § 286 (1965) provides:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results."

Restatement (Second) of Torts § 288A (1965) provides:

"(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

"(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others."

Restatement (Second) of Torts § 288B (1965) provides:

"(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

"(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct."

These rules are equitable. They are already widely followed. The previous Alaska cases, rightly construed, are all consistent with these rules. Wide changes in personal injury liability should not occur as a result of the adoption of these rules. In our opinion these rules will greatly promote stability in the law, and will simplify and expedite the many personal injury cases in our trial courts.

These rules provide that the law allegedly violated must be applicable to the situation. If the law is adopted by the court as providing a fair and just standard of rea-

sonable behavior and the violation is not excused, the violation will be negligence per se.[22]

Finally, by adopting these rules we provide a basic method of determining extenuating circumstances which will excuse the violation. We note that the list is not rigid. Comment *a* to Section 288A of the Restatement, *supra,* states: "The list of situations in which a violation may be excused is not intended to be exclusive. There may be other excuses." The rule will cover most situations. Other extenuating circumstances will have to depend upon the facts of each case.

The fear that obscure or antiquated laws may be utilized to trap the unwary should prove groundless under the above rules. In the first place the court will be free under § 286, *supra,* to refuse to adopt such a law as the standard of a reasonable man.[23] However, we wish to caution both bench and bar that we believe most traffic laws in this state do in fact represent reasonable behavioral standards. We do not intend that the inclusion of Section 288B(2) as part of the adopted rules signals a wholesale assault upon our traffic laws. The purpose of our adoption of that subsection is to provide an alternative in the rare instance in which, for one reason or another, the violated law cannot fairly be said to require reasonable behavior.[24] Needless to say, in our review of such challenged laws we shall cast a strong presumption in favor of the legislative enactment or regulation. We expect the trial courts of this state to do the same.

---

22. For a similar rule utilized in determining contributory negligence, see Restatement (Second) of Torts § 469 (1965).

23. "Obviously cases will be relatively infrequent in which legislation directed to the safety of persons or property will be so obsolete, or so unreasonable, or for some other reason inapplicable to the case, that the court will take this position; but where the situation calls for it, the court is free to do so."

Restatement (Second) of Torts § 286, comment "d". *See also* W. Prosser, Hand-

book of the Law of Torts § 35 at 201–02 (3d ed. 1964).

24. Such a distinction may be based on a feeling either that the law is somewhat obscure and unknown to the motoring public generally or a desire to leave some leeway for situations in which violations may not be unreasonable. W. Prosser, Handbook of the Law of Torts § 35 at 203 (3d ed. 1964). Of course this is not to dispute that the violation of the vast majority of traffic laws would be tortious departures from the standard of the reasonably prudent driver.

However, in the unlikely event the court does not adopt the statutory command as the standard of reasonable behavior, it may either permit the violation to be introduced as evidence relevant to the negligence issue —or it may exclude it altogether.[25]

■ Additionally, if the court holds that the statute sets forth the standard of reasonable behavior and admits evidence of its violation, the court still may, in appropriate cases, permit the defendant to introduce evidence that although he did in fact violate the law, its meaning was so obscure or unreasonable that he acted with all due care in attempting to obey it. In this case his violation could be excused under § 288A(2) (c) of the Restatement, *supra*.[26] As the court stated in Evers v. Davis, 86 N.J.L. 196, 90 A. 677, 681 (1914):

> "Thus a defendant, although he cannot be heard to say that it was not his duty to obey the statute, may show what he did in his effort to obey it, leaving it to the jury to say whether such effort was what a reasonably prudent person would have done in view of the statute."

■ We do not foresee such a defense making much headway when the typical traffic law is violated. The general rule, to be applied in the vast majority of cases, remains that all men are presumed to know the law.[27] And if a reasonably prudent man would take precautions in addition to those statutorily required, the court may, of course, find defendant negligent for failing to do so.[28]

■ Applying the above rules to the facts of this case, we hold that giving Instruction No. 10 to the jury was not error.

The instruction was worded to apply to *any* defendant in the case. Therefore, the jury could have applied it against either Mrs. Ferrell or Mr. Graves. It was worded to apply on behalf of any plaintiff. Therefore, the jury could have applied it on behalf of the Baxters, the Ferrells or Sea-Land, Inc. Sections 88, 126 and 96 of Title 13 of the Alaska Administrative Code were designed to protect the motoring public against personal and property damage and non-driving vehicle owners against property damage from collisions caused by violations of these regulations. The plaintiffs were thus protected under the law. The requirements of Restatement § 286 were met.

The court was not in error in adopting these regulations as standards of reasonable behavior under Restatement § 288B. They formed part of the knowledge all drivers in this state must possess to obtain driver's licenses. Moreover, they merely codify some of the most basic and commonsense rules of the road—the duty to keep to the right side of the road and to maintain a speed no greater than that which is safe having due regard for all the driving conditions at the time and place. To require adherence to these rules of the road was most reasonable. The regulations were doubtless followed by the average reasonably prudent driver that day on the Richardson Highway.

**25.** *See* Meyst v. East Fifth Avenue Serv., Inc., 401 P.2d 430, 435–436 (Alaska 1965), discussed, *supra*.

**26.** "It is for the court to determine in the first instance whether the excuse is one which the law will recognize, or whether it is necessarily sufficient. In cases where reasonable men may differ as to the sufficiency of the excuse, it is for the jury to determine whether the conduct is excused under the particular circumstances, under proper instructions from the court."

Restatement (Second) of Torts § 288A, comment "j" (1965).

**27.** *See* Restatement (Second) of Torts § 290(b) (1965).

**28.** Restatement (Second) of Torts § 288C (1965) provides:
"Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."

The Ferrells claim that the burden should not be on them to show excuse, but rather on the other parties to show there was no excuse. Such a stance is neither logical nor the law of this state. It is far easier for a defendant to demonstrate actively that his violation should be excused than for the plaintiff to demonstrate that it was not. Moreover, under Rogers v. Dubiel, *supra*, and its progeny it is clear that the burden is on the defendant to prove affirmatively that his violation was excused. The fact of the skidding alone is insufficient to relieve defendant from responsibility. To be absolved he must demonstrate that his violation is excusable. It is fair to put the burden of proving excuse upon the one who has violated the law in the first place.

The facts of this case indicate that either one vehicle or the other must have been over the center line. The highway was indisputably wide enough for both vehicles to pass safely. Graves and Sea-Land presented evidence sufficient for a jury of reasonable men to find that the truck was not over the center of the roadway, but that Mrs. Ferrell was, and that this violation of the law was the actual and proximate cause of the accident. Viewed in this light most favorable to appellees, the evidence was sufficient to permit a judge to give Instruction No. 10.

The instruction was proper because no party had introduced evidence of an excuse that was not covered in the instruction. No defense of incapacity was raised; nor was evidence presented indicating that either driver was rightfully ignorant of conditions requiring obedience of the law. Nor was there any showing that compliance with the rules of the road would entail greater danger than their violation. Evidence of skidding was introduced. However, this excuse which reasonable men could have viewed as resulting in an inability to comply with the regulations after exercising due care, was adequately covered in the instruction. Finally, as discussed at greater length in part 3 of this

opinion, *infra*, a sudden emergency instruction was not required in view of the other instructions that were given.

Appellants also allege that it was error to give that portion of Instruction 10 setting forth Section 126 of Title 13 of the Alaska Administrative Code, the basic speed law. The grounds for the appellants' claimed error is that there was no evidence upon which the jury could have found Mrs. Ferrell violated this law.

We disagree. The jury could have found the accident was caused by Mrs. Ferrell's excessive speed. This prevented her from stopping short of the point of collision. Sufficient evidence was offered to convince reasonable men that Mrs. Ferrell's realization of her excessive speed and the imminent collision caused her to panic and apply her brakes too hard. This over-application of the brakes in turn may well have thrown her car into the final skid. The mere fact that neither Mrs. Ferrell nor her passengers believed she was going too fast, while it would tend to rebut such an inference, would not preclude a jury from reaching the conclusion that she was in fact speeding.

It is especially noteworthy that Mr. Graves testified directly that Mrs. Ferrell's automobile "looked like it was a little too fast for the corner and being in the middle of the road like that." Clearly, such testimony alone was sufficient to support the giving of an instruction on the basic speed law. Leavitt v. Gillaspie, 443 P.2d 61, 64 (Alaska 1968); Groseth v. Ness, 421 P.2d 624, 629 n. 14 (Alaska 1966); Civ.R. 51(b). It is clear that Instruction No. 10 was properly given.

## 2. *The Rejection of Offered Expert Testimony*

Appellants offered Rudy Voigt, the owner of a Fairbanks towing and alignment service, as an expert witness. Mr. Boigt had been in the business in Fairbanks for the last twenty years and had assisted the police at 100–125 accidents per year, of which twenty to twenty-five were serious.

He regularly observed these accident scenes to determine for himself how they occurred and also because he was often called as a witness. He had previously qualified as an expert witness four or five times. In the course of his business he aligned tractor-trailer combinations similar to the Sea-Land vehicle. He often drove such trucks and was familiar with both their driving and tracking characteristics because he had to check these factors to insure proper alignment.

The court refused to permit Mr. Voigt to express an opinion as to the speed of the truck based on a photograph depicting trailer tire tracks across the hood of the Ferrell automobile. The court also refused to permit appellants to ask Mr. Voigt a question regarding the tracking tendencies of the trailer. Finally the court refused to permit appellants to pose another hypothetical question designed to elicit from Mr. Voigt his opinion regarding the location of the trailer with reference to the center of the road at the time of impact. The bases for these rulings were the lack of Mr. Voigt's qualifications and the belief that such answers would determine the ultimate issue, location of the vehicles at the time of impact, and thereby invade the exclusive province of the jury.

 As stated in State v. Phillips, 470 P.2d 266, 270–271 (Alaska 1970), a witness need not devote full time to his area of knowledge in order to qualify as an expert. It is sufficient " 'that he has the requisite intelligence and reasonable contact with the subject matter to allow him to demonstrate his expertise with reasonable skill.' " [Quoting Lewis v. State, 469 P.2d 689, 693–694 (Alaska 1970) (footnote omitted)]. The trial court must determine as well whether the trier of fact will be able to receive appreciable assistance from the expert witness.

 Equally important is the wide discretion we have permitted trial judges in determining whether to qualify witnesses as expert. The rule, dating from Pedersen v. State, 420 P.2d 327, 335 (Alaska 1966), and followed in subsequent cases [29] is that such discretion will be disturbed only if the objecting party demonstrates an abuse thereof by the trial court.[30]

In the case of Lewis v. State, 469 P.2d 689, 693–697 (Alaska 1970), this court set forth basic guidelines on qualifications of expert witnesses. We also discussed in detail just what would constitute a reversible abuse of discretion. The test applied in that case was "whether the reasons for the exercise of discretion are clearly untenable or unreasonable." 469 P.2d at 695. We went on to note that the reasonableness of the discretion exercised below will depend upon whether the trial judge has fairly balanced such factors as "the value of the evidence against the danger of undue prejudice, distraction of the jury from the issues, and waste of time." Id. at 696. Although we held that the trial court in that case had abused its discretion in refusing to qualify the witness, we affirmed the wide latitude we have traditionally given the judges in this sphere.[31]

---

29. *See* City of Fairbanks v. Nesbett, 432 P.2d 607, 611–612 (Alaska 1967) ; Crawford v. Rogers, 406 P.2d 189, 192–193 (Alaska 1965).

30. This court held in Pedersen v. State, 420 P.2d 327, 335 (Alaska 1966) :
"Also pertinent to the question of an expert's qualifications is Wigmore's view that the trial court's determination in this regard should be unreviewable. We choose not to go this far but hold that the decision in regard to the requisite qualifications of an expert witness is left to the trial court's discre-

tion and is reviewable only for abuse." (footnote omitted.)

31. *See e. g.*, State v. Phillips, 470 P.2d 266 (Alaska 1970), affirming trial court's qualification of the witness; City of Fairbanks v. Nesbett, 432 P.2d 607 (Alaska 1967), affirming trial court's refusal to qualify the witness; Pedersen v. State, 420 P.2d 327 (Alaska 1966), affirming trial court's qualification of the witness; Crawford v. Rogers, 406 P.2d 189 (Alaska 1965), affirming trial court's qualification of the witness; Oxenberg v. State, 362 P.2d 893 (Alaska)

Applying the rule to the facts of this case, we emphasize at the outset the three different questions that appellants offered to ask Mr. Voigt. The first concerned the issue of the truck's speed. Appellees objected as to lack of qualification and that this was the ultimate issue in the case. We can find no showing in the record to indicate that Mr. Voigt had "reasonable contact with the subject matter" under discussion. Mere observation of numerous accident scenes after the fact would not necessarily make him an expert in this field. Nor would extensive driving experience give him the knowledge to tell from a photograph the speed of the vehicles involved. Thus we find no error in the court's ruling here.

We find no prejudice resulting from appellants' next contention of error —that Mr. Voigt was not permitted to answer a hypothetical question concerning the trailer's tracking tendencies. Appellants were permitted to call a rebuttal witness, Edward Montgomery, and question him on just this point. They cannot now claim that prejudice resulted from the fact that they were unable to question an additional expert witness on this issue.

It is quite clear in this state that before trial the court may limit the number of expert witnesses. Bertram v. Harris, 423 P.2d 909, 916 (Alaska 1967); Fairbanks Publishing Co. v. Francisco, 390 P. 2d 784, 799 (Alaska 1964); Civ.R. 16(a) (4). Alaska is not unique in this respect. As Professor Wigmore says: "This result may be said to be universally accepted; the trial court in its discretion may limit the number of expert witnesses." 6 J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 1908 at 580 (3d ed. 1940). Such a rule is logical for several reasons. Additional witnesses may just tend to confuse the issues and the jury. Too much time may be taken up by such superfluities.

The patience of both judges and juries may be worn thin, tiring them and thereby possibly biasing them. Poor litigants may be prejudiced unless such a rule is imposed; the typical cautionary instruction [32] cannot always suffice when a poor man's single witness is matched against an opposing forensic parade. *See generally* 6 J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 1908 at 578–80 (3d ed. 1940). Since the trial court can exercise such discretion before trial, appellants generally should not complain after trial, on appeal, that the court has prejudiced them by excluding one witness if they have been permitted to examine another on the same subject.

Similarly, we find no merit in appellants' third contention of error that Mr. Voigt should have been permitted to answer a question expressing an opinion as to the location of the rear of the trailer relative to the center of the road at the time of impact. Although the basis for the question was to be Voigt's observation of the truck, tracks and point of impact at the scene, it called for more than his observations. It also asked Voigt's opinion. To give his opinion, Voight had to qualify as an expert able to determine the position of the vehicles at the time of the collision based on a view of the scene after the accident. We are not persuaded that the trial court abused its discretion in finding that Mr. Voigt did not possess sufficient knowledge to assist the jury in determining this issue.

Although appellees also rely on the argument that the witness should not have been permitted to testify regarding an ultimate issue in the case, we must expressly reject such a position. We held in Oxenberg v. State, 362 P.2d 893, 900 (Alaska), cert. denied, 368 U.S. 56, 82 S. Ct. 189, 7 L.Ed.2d 128 (1961), that if the jury

cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961), affirming trial court's qualification of the witness.

32. Civ.R. 51(b) (1).

"could receive appreciable help or assistance from the opinion of the expert witness, then his testimony was admissible. It would not be a ground for objection in the latter instance that the opinion embraced the ultimate issue to be decided, i. e., the cause of the fire. The jury decides this issue—not the expert witness—and all that is done is to permit the jury to receive some assistance where it is needed and from a person who, because of his training, experience and observations, is able to render that assistance." (footnotes omitted.)

We thus affirm the trial court in the above rulings.

### 3. The Requested Sudden Emergency Instructions

 Appellants requested that the court give two instructions defining the duty of one in a sudden emergency.[33] The court refused to do so on the ground that the instructions were "redundant" and therefore "improper", since the circumstances of the sudden emergency were covered in the instructions defining negligence generally.[34]

33. Instructions No. 2 & 3 as requested by the Ferrells read:
> "JURY INSTRUCTION NO. 2
> "A person who, without negligence on her part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to herself or to others, is not expected, nor required to use, the same judgment and prudence that are required of her in the exercise of ordinary care in calmer and more deliberate moments. Her duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment, she does what appears to her to be the best thing to do, and if her choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, she does all the law requires of her, although in the light of after events, it should appear that a different course would have been better and safer."
> "JURY INSTRUCTION NO. 3
> "When a situation of peril such as that just described is proximately caused by someone's negligence, and the person in peril, acting under the impulse of fear, makes an instinctive and reasonable effort to escape, and, in so doing, injures herself or a third person, the negligence that so caused the peril is deemed in law to be the proximate cause of the injury, although from the viewpoint of another person it might have appeared, or after the event it may appear, that the effort to escape was unwise, or that no one would have been injured if that effort had not been made or had been made differently."

34. Instruction No. 5 stated:
> "At this point in the instructions, I would like to define some general terms

which will be used throughout the instructions and as to which you will be more fully instructed upon subsequently.
> "Negligence is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, actuated by those considerations' which ordinarily regulate the conduct of human affairs. It is the failure to use ordinary care in the management of one's property or person.
> "Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to others. The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to an ordinarily prudent person in the particular situation and circumstances involved.
> "One test that is helpful in determining whether or not a person was negligent is to determine whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated an unreasonable risk of harm to someone as a result of action or inaction. If such a result from certain conduct would be 'foreseeable by a person of ordinary prudence with like knowledge and in a like situation, and if the conduct could be avoided, then not to avoid it would be negligence.
> "Negligence is not an absolute term, but a relative one. By this it is meant that in deciding whether there was negligence in a given case, the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence."

Appellants do not believe the instructions redundant. They specifically argue that the instruction actually given does not specify that the jury was required to focus on Mrs. Ferrell's actions "at or immediately before the time of the accident." Moreover they claim that the instruction fails to explain that an actor may not be excused by the emergency if it was caused by his own fault.

All parties argue that the Alaska case on point is Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430, 432–433 (Alaska 1965). A defendant in that case requested an instruction similar to requested Instruction 2, *supra*.[35] This court held that the instruction given defining negligence was adequate in all respects.[36] Comparing Instruction 5 in this case[37] with Instruction 12 in *Meyst*,[38] it is readily apparent that the former is the more complete. If it was not error to give Instruction 12 in *Meyst*,

Instruction 5 is certainly more than adequate. It is of no importance that Instruction 5 did not specify that the jury must focus on the time "at or immediately before the accident." They were instructed to judge the conduct of the parties "in the particular situation and circumstances involved," and to judge them by the standard of " * * * a person of ordinary prudence * * * in the same situation and possessed of the same knowledge * * *." The jury was also adequately instructed on the possible contributory negligence of Joan Ferrell.[39] There was no necessity to specifically instruct the jury that Mrs. Ferrell could not recover if she caused the emergency.

We note that, while in this case as in *Meyst*, the court did not err by refusing to give the requested instructions, we cannot say that it would have erred by giving them.

---

35. *See* note 33, *supra*.

36. Although not set out in that opinion, Instruction 12 read in full:
"NO. 12
"In his complaint in this action and by his testimony, plaintiff claims that he was injured as a result of the negligence of the defendant. All questions of negligence or absence of negligence are for your determination.
"In this connection, it is necessary to know what is meant by negligence. Negligence means the want of ordinary care; that is, the want of such care as an ordinarily reasonable and prudent person would exercise under like circumstances, and so, in determining whether or not the defendant was negligent on the occasion in question, you must determine whether he did or did not exercise ordinary care in what he was doing or attempting to do at or immediately before the time of the accident; that is to say, whether he did or did not exercise such care as an ordinarily reasonable and prudent person would exercise under like circumstances. If he failed to exercise such ordinary care, he was negligent; but if he did exercise such ordinary care, then he was not negligent."

37. *See* note 34, *supra*.

38. *See* note 36, *supra*.

39. Instruction 6 stated:
"When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently and as proximate causes to the injury of another, each of such persons is liable. This is true regardless of the relative degree of the contribution.
"In this same context, you are instructed that the defendants Graves and Sea-Land have set up a defense of contributory negligence against the claim of Joan Ferrell and her husband. Contributory negligence is such an act or omission on the part of Joan Ferrell amounting to a want of ordinary care as concurring or co-operating with the negligent act of the defendants Graves and Sea-Land was the proximate cause of the injury to Joan Ferrell. Such contributory negligence on her part, regardless of the relative degree of the contribution, that proximately caused her injuries, bars her claim and that of her husband for the law recognizes no relative degree of contribution to an injury, and you are not to weigh or balance such contributory negligence against any negligence on the part of the defendants Graves and Sea-Land just as I have instructed you above with reference to the acts of two or more persons whose conduct, concurrently and proximately, causes injury to another."

*4. Miscellaneous Matters*

■ Appellants claim that in awarding attorneys fees totaling $7,100 the court abused its discretion. Viewing the complexity of the factual issues and the length of the trial as well as the potentially large liability of Graves and Sea-Land, we cannot find the award was unreasonable. Froelicher v. Hadley, 442 P.2d 51 (Alaska 1968); Civ.R. 82(a) (2).[40]

■ Appellants also contend that the trial court denied them a fair trial by assuming a biased attitude against them. They cite us to numerous portions of the record indicating what they claim are examples of the prejudice of the trial judge. After carefully reviewing the entire transcript sent up to us, we are unable to agree with appellants. We find no reversible, prejudicial attitude in this case.[41]

Appellants alleged numerous additional grounds for reversal. After carefully examining the record, we find no merit in any of these claimed errors. We therefore affirm the judgment of the superior court.

Affirmed.

ERWIN, J., not participating.

RABINOWITZ, Justice (concurring in part, dissenting in part).

The focal point of my disagreement with the court's decision centers upon the adoption of the negligence per se criteria of the Restatement. Given retention of the present fault premised negligence system, and the absence of comparative negligence doctrines, I think this court should have adopted the rule that violation of an applicable statute, ordinance, or regulation is evidence of negligence and not negligence per se. For in my view, an evidence of negligence rule is more easily grasped by jurors, presents fewer difficulties from the vantage point of judicial administration, and would have a less drastic impact upon the resolution of contributory negligence issues.

In the end, I suppose the choice one makes is dependent upon an evaluation of the performance of juries in negligence actions. For my part, I would continue the common law's long tradition of placing the responsibility for determination of the standard of reasonable care with the jury.

I join in the court's disposition of all other issues in the appeal.

---

40. *See also* American Serv., Inc. v. Tundra Inv. Co., 473 P.2d 614 (Alaska 1970); Palfy v. Rice, 473 P.2d 606 (Alaska 1970).

41. *See* Crawford v. Rogers, 406 P.2d 189, 195 (Alaska 1965), for another instance in which this court rejected a similar contention.