Bill COFFEL, Appellant,

v.

Patrick STEWARD, Appellee.

No. 3970.

Supreme Court of Alaska.

May 23, 1980.

---

18. *Continental Ins. Co. v. United States Fidelity & Guaranty Co.*, 552 P.2d 1122, 1128 n. 18 (Alaska 1976).

William D. Artus, Anchorage, for appellant.

Roger DuBrock, Anchorage, for appellee.

Before RABINOWITZ, C. J., and BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

The parties to this appeal were co-owners of a Piper PA–12 aircraft. The plane was wrecked in September 1972, while being piloted by Patrick Steward, appellee. The crash occurred when the plane turned over on a remote lake on the Alaska Peninsula. Thereafter, in June 1973, appellant, Bill Coffel, accepted Steward's offer of $3,500 for his one-half interest in the aircraft.

On July 17, 1975, Coffel filed suit in the district court, alleging that he had been induced to sell his interest at a price far below its actual market value by Steward's fraudulent representation that the aircraft was damaged beyond repair. Appellant prayed for an award of damages equal to the market value of his interest, as well as an additional amount for his loss of use of the aircraft. Steward denied liability.

After a non-jury trial, the district court found that in their ownership agreement the parties had agreed that if either party wrecked the aircraft he would pay his co-owner $3,500 for the latter's interest.[1] However, the court further found that at the time of the crash Steward was operating the aircraft so as to breach an implied condition of the contract. He was carrying passengers, which his particular pilot's rating did not permit him to do, in violation of regulations of the Federal Aviation Administration. The court concluded that this "violation vitiates, beyond any shadow of doubt, any contract made between [the parties]." The court then awarded Coffel $5,500 (over and above the $3,500.00 already paid to him) for the then market value of his interest in the aircraft, $2,400 for his loss of use of the aircraft during the summers of 1973 through 1976, his costs and attorney's fees, plus interest on the judgment.

The court's finding of liability was based upon its conclusion that Steward was guilty of fraud in negotiating his purchase of Coffel's interest. Steward told Coffel that the aircraft had been "totalled." In fact, several months after the crash he had been able to make sufficient repairs to allow the plane to be flown to Anchorage. There, additional repairs were made so that, by the

---

1. The plane was worth approximately $7,000 when the agreement was made.

time of his purchase of Coffel's interest, the plane had been restored to a condition better than the one it was in before the crash. Its fair market value at the time of trial was found to be $18,000. For these reasons, the court found that a fraud had been committed and entered judgment in favor of Coffel.

Steward appealed to the superior court where the district court's judgment was reversed. The superior court held that the trial court's determination that Steward's violation of the Federal Aviation Administration's regulations abrogated the contract between the parties was error. This holding was based upon the superior court's determination that there was "no evidence in the record to support the underlying finding that the violation of the regulation was related to the accident." The court further concluded that, "in any event, the parties contracted in order to liquidate their damages, regardless of the cause, when one of them wrecked the airplane." Thus, the court held that "Steward owed no further obligation to Mr. Coffel," since Steward had already paid him "the amount which they had agreed upon beforehand as liquidated damages." Coffel's appeal to this court followed.

Coffel concedes that there was sufficient evidence to support the district court's finding that there was a buy-out agreement reached in 1967–1968 by which $3,500 was to be paid if one party wrecked the aircraft. Thus, for purposes of this appeal, Coffel "acknowledges the existence of a contract for joint-ownership of the subject aircraft with a $3,500.00 buy out figure agreed upon in 1967–68." We see no reason to question this concession in reaching our own decision.

■ Coffel first argues that Steward's violation of the Federal Aviation Administration regulations constituted a breach of the parties' contract so as to preclude his enforcement of its buy-out provisions. In his brief submitted to the superior court, Coffel agreed that "[t]he record will not disclose what caused the accident." He now argues that "the accident might not have occurred if [Steward] was flying without the added weight and distraction of passengers." Since there is admittedly no evidence that the act constituting the violation contributed in any way to the crash or to any loss suffered by Coffel, we agree with the superior court's conclusion that the violation did not abrogate the contract between the parties and its holding that the district court erred in ruling to the contrary. *See Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971).

■ Prior to the crash, the value of the plane had increased substantially due to appreciation.[2] Because of this, Coffel next contends that the contract between the parties should be interpreted as containing an implied provision that the $3,500 buy-out figure would increase with time. He argues that it is only reasonable to assume that the parties intended the buy-out figure to increase in relation to the value of the plane and that Coffel was, therefore, under no obligation to accept $3,500 for his interest.

Coffel admits that this matter was never discussed by the parties. His only argument is that, since the parties must have known that the value of the plane would increase with the passage of time, it would be unreasonable to assume that they intended the $3,500 buy-out figure to be binding regardless of subsequent increases. We disagree. We think it quite reasonable to assume exactly that. Such a limitation would operate to protect each of the parties from liability for more than the amount of his co-owner's original investment. Thus, both could operate the aircraft without the added cost of insuring themselves against the risk of that additional liability. This interpretation, we think, is at least as reasonable as the one suggested by Coffel.

2. George Grant, an expert witness, testified: "[Since 1970] these aircraft have been appreciating 15 percent a year, 10 to 15 percent, assuming they're maintained and kept in airworthy condition." Another expert, Clinton T. Center, estimated the rate of appreciation during that period to be "[p]ossibly 10 percent a year."

■ However, despite the fact that the contract contained a provision that would have allowed Steward to buy out Coffel's interest for $3,500 at the time he wrecked the aircraft, we conclude that Steward's later conduct precluded him from enforcing that provision.

We believe that every contract contains an implied term that the parties thereto will act honestly toward one another with respect to the subject matter of the contract. Here, the evidence was more than sufficient to support the district court's conclusion that Steward was guilty of fraud in negotiating his purchase of Coffel's one-half interest. Thus, we conclude that Steward materially breached the contract, when he induced Coffel to accept $3,500 for his interest without first disclosing to Coffel the fact that by then the aircraft had been returned to Anchorage and fully repaired. This breach, in our opinion, was a material breach, sufficient to preclude Steward from enforcing the remaining terms of the agreement, *i. e.*, the $3,500 buy-out provision.

As we view the case, Coffel is entitled to recover one-half of the aircraft's fair mar-

ket value as of the date upon which he conveyed his interest to Steward, less the $3,500 that he has already received, plus interest. In calculating the aircraft's fair market value on that date, the trial court should deduct the cost of improvements made by Steward, if any, over and above those reasonably necessary to restore the aircraft to the condition that it was in at the time that it was wrecked.[3]

The judgment of the superior court is reversed with instructions to remand this matter to the district court for further proceedings consistent with the foregoing paragraph.

REVERSED and REMANDED.

CONNOR, J., not participating.

---

3. By this we mean such items as addition instruments, radios, structural modifications, or other improvements which were not required to restore the aircraft to the condition that it was in prior to being wrecked.